CATHERINE G. WOOD, Respondent, *v.* NEW YORK STATE ELECTRIC AND GAS CORPORATION, Appellant.

Third Department, May 24, 1939.

*Arland & Pratt* [*Ransom Pratt* of counsel], for the appellant.

*Levi* and *Samuel Ginsburg*, attorneys [*Samuel Ginsburg* of counsel], for the respondent.

PER CURIAM. Plaintiff's attorney was well within his rights in his examination of the prospective jurors. Section 452 of the Civil Practice Act states that the fact that a juror is in any manner interested in any insurance company issuing policies for protection against liability for damages for injury to persons or property will constitute a good ground for challenge to the favor as to such juror. The plaintiff was entitled to inquire fully into all the facts bearing upon any interest which any prospective juror might have in any such insurance company. Also plaintiff's counsel very properly showed the interests of the investigator for the defendant's insurance company when such investigator was offered as a witness by the defendant. The summation by defendant's counsel with its appeal to the financial interest of the jurors themselves and its illy disguised appeal to race prejudice was wholly out of place in

a court of justice and must be severely condemned. Defendant's counsel is in rather the anomalous situation of conceding his own transgression in this regard but still urging that a new trial should be granted because the plaintiff also offended. Plaintiff's counsel apparently felt it necessary to answer the improper arguments of his adversary and we do not condone such action on his part. The defendant does not come to us with clean hands and it should not be allowed to now take advantage of its adversary's missteps when it was the first and chief offender. It would be an injustice to deprive this plaintiff of her verdict under these circumstances and we, therefore, leave these parties as we find them.

The judgment and order should be affirmed, with costs.

HILL, P. J., BLISS and HEFFERNAN, JJ., concur; CRAPSER, J., dissents and votes to reverse, for the reasons stated in an opinion prepared by the late Justice RHODES, which reflects the views of CRAPSER, J., and is hereby adopted by him.

CRAPSER, J. (dissenting). (This opinion was prepared by the late Justice RHODES. It reflects my views, and is adopted by me.) The action is for negligence. The car in which plaintiff was a passenger came into collision with a car driven by an employee of the defendant, as a result of which she sustained injuries for which she has been awarded a verdict.

It will serve no useful purpose to discuss the merits of her claim, since the judgment should be reversed for the reasons hereinafter set forth.

At the outset in the examination of jurors, plaintiff's counsel went to the extreme limit permitted in questioning the jurors as to whether they were interested in any liability insurance company, and the subject was needlessly over-emphasized. (*Rodzborski* v. *American Sugar Refining Co.*, 210 N. Y. 262; *O'Brien* v. *Hencken & Willenbrock Co.*, 172 App. Div. 142.) Later in the trial it appeared that plaintiff and her husband had been interviewed in behalf of the defendant concerning the accident and the interviewer was placed on the stand by the defendant, whereupon plaintiff's counsel brought out on cross-examination that he was employed by the insurance company in question.

In his summation defendant's counsel, among other things, stated: " Many of you drive cars, many carry insurance, and you know the insurance rates are proportioned with regard to the way the affairs are handled, and if you have a high loss ratio in any particular area like Elmira, for instance, naturally your rate advances with the loss ratio, and the more verdicts there are that are covered by insurance the higher you gentlemen have to pay for protection to

your own car, in order to protect your own people and in order to protect your own property, and it is a good business proposition for any man to carry insurance, as this company has done. * * * That is the situation we have to confront here, and only by the verdict of an American jury are you going to be able to suppress this insurance racket. And that is what it is, because if you examine the calendar here you will find four-fifths of the cases, or more, are negligence cases. Gentlemen of the jury, if we can't trust to the honesty, the fairness and the good business sense of an American jury, what chance has an insurance company, what chance has a public utility company, what chance has an ordinary business man, what chance have you and I, driving our cars on the highway? * * * I am asking at your hands under American justice by an American jury, a verdict of no cause of action for the defendant."

Plaintiff's counsel in his summation stated, among other things: "And here is something that is significant, because when you have two corporations fighting you, a corporation like the Gas & Electric reaching out all over, and then you have this insurance corporation on top of you, and they are reaching out and they are trying to grind this woman up like two stones in a mill * * *. Here is another situation. He gets up and makes a great big speech about insurance companies, and about rates, and so forth. Gentlemen, we are not asking a verdict here in this case because it happens to be the Associated Gas & Electric Corporation, and because on top of that they have a big insurance company to help them. That is not our point at all, gentlemen. But we say this, that just because it is a big corporation like the Associated Gas & Electric, and just because they have got a big insurance company to work with them, shouldn't enable them to grind Mrs. Wood's cause of action like two stones, but that she should get a square deal and have a chance to present her case and have it presented fairly. * * * In this particular case the plaintiff has been in the mill. She has been between those two stones, that is, Associated Gas on one side and this insurance company on the other, working and grinding against her. So far she has been in that position. Next month and next year you or someone near and dear to you may be in that position. They might be right there trying to put the same thing over on you."

There was much more than these excerpts in the respective summations which transcended the bounds of propriety.

The oath of jurors that they will render a fair and impartial verdict solely on the evidence, is not merely an empty form and ceremony. It epitomizes the spirit and ideal of justice. The purpose of many of the rules of evidence is to keep from the jury

matters which would tend to distract their attention from the issues involved or have a tendency to create bias and arouse prejudice and passion, making it difficult or impossible for the jury to render a fair, impartial and dispassionate verdict. Similarly, counsel are expected to confine themselves within limits which avoid such improper appeals to prejudice and the tendency to influence the jury improperly. It is self evident that the stability of our jury system requires that the facts presented be determined by impartial consideration thereof without distorted judgment influenced by extraneous matters. Otherwise why have courts and juries? When resort to the courts for justice becomes futile, the obvious alternative which will suggest itself, at least to the unthinking, will be to take the law into their own hands, and when that situation arises, at that same instant mob rule, lynch law and anarchy arrive.

Even a casual reading of these summations is convincing that they tended and were calculated to arouse the prejudices and passions of the jury, to influence them improperly and to divert their attention from an impartial consideration of the facts. No attempt is here made to apportion the culpability of opposing counsel. The fact remains that it is impossible to say that the verdict is the result of impartial judgment on the proven facts; in truth it is difficult to believe that a just verdict could have been rendered in the face of such distractions.

It may be suggested that the parties being equally in the wrong, the judgment should not be disturbed, and that they should be left in this situation in which they have placed themselves, but such a course would permit the plaintiff to enforce the judgment and profit from a verdict arrived at under such dubious and unsavory conditions.

It is hardly a sufficient answer to say that the misconduct of counsel on one side excuses retaliation in kind by the opposing attorney; with similar plausibility counsel might seek to justify embracery and subornation of perjury.

Under the circumstances justice will best be served by remitting the parties to a new trial in the hope that the ultimate determination will be creditable to the instrumentalities of justice and leave no doubt that it represents the unbiased and deliberate judgment of the triers of the fact.

The judgment and order should be reversed on the law and the facts and a new trial granted, with costs to abide the event.

Judgment and order affirmed, with costs.