Fuld, J.
In this action — the wife’s for personal injuries suffered and the husband’s for loss of her services and for medical expenses incurred — the complaint has been dismissed, and we are called upon to determine whether a statute of a foreign jurisdiction authorizing direct actions against liability insurance companies may be enforced in this State.
While on a visit to Puerto Rico with her husband in April of 1963, Airs. Oltarsh slipped and fell in a building owned by a Puerto Rican corporation solely in consequence, it is alleged, of the latter’s negligence. The defendant Aetna Insurance Company, incorporated in Connecticut and doing business in New York and Puerto Rico, had issued and delivered in Puerto Rico *114 a policy of public liability insurance covering the premises where the accident occurred and, some time after their return to New York City where they both resided, the plaintiffs instituted this action in our Supreme Court against the insurance carrier, based upon a statute of the Commonwealth of Puerto Rico sanctioning .such a direct action (Laws of Puerto Rico, tit. 26, §§ 2001, 2003 ).[1]
The defendant moved to dismiss the complaint on the ground that the court lacked jurisdiction of the subject matter of the action (CPLR 3211, subd. [a], par. 2). The court at Special Term, agreeing with the position taken by the defendant, granted the motion, ¡stating that “ [the] action is objectionable to the public policy of this State and as such is not enforcible in our courts (Morton v. Maryland Cas. Co., 1 A D 2d 116, affd. 4 N Y 2d 488).”[2] The Appellate Division affirmed the dismissal of *115 the complaint and granted the plaintiffs leave to appeal to this court.
The Puerto Bican statute before us — resembling in general purpose legislation in .several other jurisdictions (La. Rev. Stat., tit. 22, § 655; B. I. Gen. Laws 1956, tit. 27, ch. 7, § 27-7-1; Wis. Stats. Ann., tit. 25, ch. 260, § 260.11, subd. [1])—provides (1) that the insurer issuing a liability policy shall become “ liable ” whenever a covered loss occurs and that payment of such loss under the policy “ shall not depend upon payment by the insured of or upon any final judgment against him arising out of .such occurrence ” (Laws of Puerto Rico, tit. 26, § 2001) and, further, (2) that any person .sustaining damages or loss shall have an option to bring ‘ ‘ a direct action ’ ’ against the insurer alone or against the insurer and the insured jointly (§ 2003, subd. [1]). This State has no similar legislation, and it is this difference which gives rise to the question presented on this appeal. And, in seeking an answer, we must first decide whether the issue — the right of the plaintiffs to sue the insurer directly—is (to employ traditional rubrics) “ procedural ” and, by that token, necessarily governed by the law of the forum or “ substantive ” and, hence, governed by the law applicable under choice of law principles.
By making the insurer immediately liable whenever a covered loss occurs and rendering ineffectual " no action ’ ’ clauses in insurance contracts,[3] Puerto Bico’s statute did more than simply *116 redefine the proper parties to suits involving insurance contracts and went beyond merely providing a procedural shortcut for those injured by insured tort-feasors. Bather, the statute created a ¡separate and distinct right of action against the insurer where no ,sueh right had previously existed and thus effected a radical change in the rights accorded injured persons.
There can be no doubt, then, that such direct action legislation transcends mere procedure and, indeed, in Morton v. Maryland Cas. Co. (4 N Y 2d 488, 493, affg. in this respect 1 A D 2d 116, 120), we implicitly recognized the substantive character of the somewhat similar Louisiana direct action statute for purposes of the conflict of laws. (See, also, Collins v. American Auto. Ins. Co., 230 F. 2d 416, 419-422; Lumbermen’s Cas. Co. v. Elbert, 348 U. S. 48, 51; Watson v. Employers Liab. Corp., 348 U. S. 66; West v. Monroe Bakery, 217 La. 189; Kertson v. Johnson, 185 Minn. 591, 595 [involving Wisconsin’s direct action statute]; Note, 57 Col. L. Rev. 256, 272.) And, although it is the settled rule that the forum undertakes its own characterization of a foreign statute (see Kilberg v. Northeast Airlines, 9 N Y 2d 34, 41; Murray v. New York, O. & W. R. R. Co., 242 App. Div. 374; Collins v. American Auto. Ins. Co., 230 F. 2d 416, 422, supra; Restatement, Conflict of Laws, § 584), it is relevant that the United States Court of Appeals for the circuit which includes Puerto Bico has treated that Commonwealth’s direct action statute as substantive for purposes of the Erie doctrine (Erie R. Co. v. Tompkins, 304 U. S. 64), declaring that that statute “ relate [s] to the substance of the liability of the insurance company.” (Aponte v. American Sur. Co. of N. Y., 276 F. 2d 678, 680; see, also, Bosco v. Firemen’s Fund Ins. Co., 171 F. Supp. 432, 434; Santiago v. United States Fid. & Guar. Co., 183 F. Supp. 676.) A principal Erie purpose, like that of the conflict of laws, is to assure, so far as possible, that the result in a particular case is the same regardless of forum.
It is clear that the aim of Puerto Bico’s legislation is to substantially add to the rights of “ [a]ny individual sustaining damages and losses ” covered by the insurance policy under which suit is brought. While the Puerto Bican statute furnishes no concrete clue to legislative intention concerning its reach where a person is injured or insurance is contracted outside of Puerto Bico (cf. Watson v. Employers Liab. Corp., 348 U. S. 66, supra). *117 its applicability to a case such as the present — involving an injury in Puerto Rico, occasioned by alleged wrongful conduct there committed, which is within the coverage of an insurance policy delivered in Puerto Rico by an insurer doing business there — cannot be doubted.
Moreover, the statute is so broadly drawn that, contrary to the defendant’s contention, it may not reasonably be read to cover only injuries to Puerto Rico’s own citizens. Puerto Rico has a legitimate interest in, safeguarding the rights of any persons injured within its borders. Enactment of the statute emphasizes the Commonwealth’s understanding that such injured persons might have to be cared for by it (or its inhabitants) and evidences its intention that certain and prompt compensation, from the tort-feasor’s insurer, be available both to those injured and to those who care for them. What the Supreme Court wrote in Watson v. Employers Liab. Corp. (348 U. S. 66, supra), in upholding the constitutionality of Louisiana’s direct action statute, is to the point (p. 72): “ Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relatives or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for the recovery of damages. It has a similar interest in policies of insurance which are designed to assure ultimate payment of such damages.” (See, also, Note, 74 Harv. L. Rev. 357, 379.)
It follows, therefore, that on the issue concerning the defendant’s direct liability to the plaintiffs we should look to the law of Puerto Rico. As we have already seen, that is the place where the wrong and injury occurred, where the insurance policy was issued, where the insured tort-feasor was incorporated and where the insurer did business.[4] In short, Puerto Rico is the *118 jurisdiction which has the most significant relationship and contacts with respect to the matter in dispute and, accordingly, its law should be applied (see, e.g., Babcock v. Jackson, 12 N Y 2d 473; Auten v. Auten, 308 N. Y. 155; see, also, Restatement, Second, Conflict of Laws, § 383b, Comment c [Tentative Draft No. 9, 1964])—unless there is some local public policy which prohibits our courts from assuming jurisdiction of the suit. (Cf. Loucks v. Standard Oil Co., 224 N. Y. 99.) And such is, in effect, the defendant’s contention. It urges that it would be contrary to this State’s public policy to enforce the statute in our courts. The argument is predicated on decisions holding that it is reversible error to disclose to the jury the fact that the alleged tort-feasor carries insurance (see Simpson v. Foundation Co., 201 N. Y. 479; Akin v. Lee, 206 N. Y. 20; cf. Kelly v. Yannotti, 4 N Y 2d 603), and it was on the strength of such cases that the Appellate Division concluded in Morton (1 A D 2d 116, 123-124, supra) that the Louisiana direct action statute violated New York’s public policy.
The argument misapprehends the import of those decisions. Our rule precluding disclosure of insurance has never been absolute. Reference to insurance is condemned only where the fact of its existence is irrelevant to the issues and where such reference is, in all likelihood, made for the purpose of improperly influencing the" jury. (See Leotta v. Plessinger, 8 N Y 2d 449, 461-462; Akin v. Lee, 206 N. Y. 20, 23, supra.) Where, however, the fact of insurance or the existence of an insurer is properly or legitimately in the case, there can be no ground for complaint. (See, e.g., Leotta v. Plessinger, 8 N Y 2d 449, supra, Wood v. New York State Elec. & Gas Corp., 281 N. Y. 797, affg. 257 App. Div. 172; Di Tommaso v. Syracuse Univ., 218 N. Y. 640, affg. 172 App. Div. 34; Rashall v. Morra, 250 App. Div. 474.) Likewise, where an insurer is sued for damages stemming from its own breach of contract or commission of a tort, the plaintiff is not denied a right to trial by jury simply because his adversary happens to be an insurance company.
Moreover, as has been aptly observed, it is the rare individual who today does not know that “ defendants in negligence cases are insured and that an insurance company and its lawyer are defending”. (Oltarsh v. Aetna Ins. Co., U. S. Dist. Ct., S. D. N. Y., Nov. 8, 1963, Murphy, J.; see, also, Lassiter, Direct *119 Actions Against the Insurer, 1949 Insurance Law Journal 411, 416.) Indeed, such an awareness must have been considerably heightened by the advent of legislation requiring compulsory liability insurance for owners of motor vehicles in this State (Vehicle and Traffic Law, § 312).
Nor does any provision of our Insurance Law militate against enforcement of the Puerto Rican statute. Section 167 of the Insurance Law does, as the defendant asserts, reveal a pattern different from that embodied in Puerto Rico’s direct action legislation but that is not sufficient basis for declining jurisdiction or refusing to apply the foreign provision. ‘ ‘ Public policy ”, we recently observed, “is not determinable by mere reference to the laws of the forum alone ”. (Intercontinental Hotels Corp. v. Golden, 15 N Y 2d 9, 14.) As Judge Cardozo expressed it in writing for the court in Loucks v. Standard Oil Co. (224 N. Y. 99, 110-111, supra), “ Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. * * * We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home The absence of similar legislation does not prove that the foreign statute offends the local policy, and our courts should be made available for its enforcement unless to do so “ would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal ”. Quite obviously, there is no such violation here.
It is only necessary to add — turning to the defendant’s final point — that maintenance of the present action may not be defeated on the ground that Puerto Rico intended that its direct action statute be enforced solely by suits instituted in its own courts. Unlike the Louisiana statute with which we were concerned in the Morton case (4 N Y 2d 488, supra), the statute before us contains no built-in venue provision, no clause even remotely resembling the “ localizing ” provision in the Louisiana statute, or any other language which could possibly be read as a limitation restricting to the courts of Puerto Rico the direct actions it authorizes. The clause relied upon by the defendant — that no policy delivered in Puerto Rico covering a subject of insurance there located shall contain a recital “ [depriving the *120 courts of Puerto Rico of jurisdiction of action against the insurer ” (Laws of Puerto Rico, tit. 26, § 1119, subd. [1], par. [b])—has for its sole purpose the protection of the insured. It provides an assurance that he will not be compelled, by any policy provision, to go outside of Puerto Bico in order to sue on his policy, and section 1119 may not be .read to require suit under the direct action statute to he brought only in the courts of Puerto Bico.
The order appealed from should be reversed, with costs in all courts, and the defendant’s motion to dismiss the complaint denied.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke, Scileppi and Bergan concur.
Order reversed, with costs in all courts, and matter remitted to Special Term fox further proceedings in accordance with the opinion herein.

. Section 2001 provides, in full, that
“ The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, death, or damage to property of a third person, shall become absolutely liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such occurrence.”
And subdivision (1) of section 2003 goes on to declare that
“ Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of-the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.”

. Prior to instituting the present suit, the plaintiffs had brought one, based on an identical complaint, in the United States District Court for the Southern District of New York. That action was dismissed, on the defendant’s motion, since the Federal court, so it stated, was of the opinion that such a disposition was demanded by the Appellate Division’s decision (1 A D 2d 116) in the Morton case: “Despite our personal feelings and (lie forcefully logical argument presented by the plaintiffs ”, wrote the District Court Judge, “ we are duty bound to follow the New York Appellate Division until the New York Court of Appeals speaks otherwise.” (Oltarsh v. Aetna Ins. Co., U. S. Dist. Ct, S. D. N. Y., Nov. 8,1963, Murphy, J.)
*115 2. (contd.) The Appellate Division in Morton (1 A D 2d 116) had dismissed the action on two grounds — first, that the Louisiana direct action statute there involved contained a venue provision which required that suits under it be brought exclusively in Louisiana, either in the parish where the accident or injury occurred or in the parish where the insured was domiciled (pp. 122-123), and, second, that such a direct action offended New York’s public policy of keeping from the jury the fact of insurance (pp. 123-124). On appeal, this court, without passing on the public policy issue, affirmed the Appellate Division solely on the ground that there was a built-in venue provision and that the action had to be instituted in Louisiana (4 N Y 2d 488, 493).

. The usual and typical “ no action ” clause provides, in substance, that no action shall lie against the insurance company unless, as a condition precedent thereto, the insured shall have fully complied with the terms of the policy, nor until the amount of the insured’s obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the insurer.

. The circumstance that the defendant does business in this State, as well as in Puerto Rico, is, in the present context, a matter of relatively minor importance which does not involve a relevant New York interest. The contract under which the defendant is being sued arose out of business transacted in Puerto Rico and any liability to which it might be exposed thereunder is not likely to have a significant bearing on insurance rates which it imposes on residents of this State.