Mariana TORRES VDA. De Reyes, as Judicial Administratrix of the Estate of Juan Reyes Benítez and on behalf of herself as widow and on behalf and for the benefit of his heirs, Neldi Reyes Torres, Juan Reyes Torres, Wilgton Reyes Torres, Evelyn Reyes Torres, and Ginger Reyes Torres, Plaintiffs,

v.

INTERSTATE FIRE AND CASUALTY COMPANY, Defendant.

Antonio OBREGON and Norberto Quiles, Plaintiffs,

v.

INTERSTATE FIRE AND CASUALTY COMPANY, Defendant.

Lorraine T. ROACH, as Administratrix of the Estate of Robert B. Roach, deceased, and on behalf of herself as widow, and on behalf of Michael William Roach, and Kathleen Ellen Roach, minor children of the deceased, Plaintiffs,

v.

INTERSTATE FIRE AND CASUALTY COMPANY, Defendant.

Mariana TORRES VDA. De Reyes, as Judicial Administratrix of the Estate of Juan Reyes Benítez and on behalf and for the benefit of his heirs, Neldi Reyes Torres, Juan Reyes Torres, Wilgton Reyes Torres, Evelyn Reyes Torres, and Ginger Reyes Torres, and Mariana Torres VDA. De Reyes, Plaintiffs,

v.

SUN MARINE SERVICE, INCORPORATED, Defendant,

Antonio OBREGON and Norberto Quiles, Plaintiffs,

v.

SUN MARINE SERVICE, INC., Defendant.

Lorraine T. ROACH, as Administratrix of the Estate of Robert B. Roach, deceased, and on behalf of the widow and children of Robert B. Roach, deceased, Plaintiffs,

v.

SUN MARINE SERVICE, INC., Defendant.

In the Matter of the Complaint of SUN MARINE SERVICE, INC., Plaintiff, as owner of the diesel propelled TUG LEEBO, for exoneration from or limitation of liability.

Civ. Nos. 79–67, 51–67, 53–67, 381–66, 333–66, 488–66 and 654–660.

United States District Court
D. Puerto Rico,
San Juan Division.

Nov. 17, 1967.

Hartzell, Fernández & Novas, San Juan, P. R., for Interstate Fire and Cas. Co. and Sun Marine Service Inc.

Nachman & Feldstein, Laffitte, & Smith, San Juan, P. R., for Lorraine T. Roach, and others, Norberto Quiles, and Antonio Obregon.

Felix Ochoteco, Jr., and Luis R. Polo, San Juan, P. R., for Mariana Torres Vda. de Reyes, and others.

OPINION

CAFFREY, District Judge.*

This matter came before the Court upon the basis of several motions filed in four actions of tort for personal injury, wrongful death, and property damage, brought against the owner of a vessel and the insurer thereof, and in a related limitation proceeding brought by the owner of the vessel.

The motions, which were extensively briefed by the parties, are:

1. Plaintiffs' motion to consolidate proceedings, vacate stay, and to defer limitation proceedings until after jury trial (filed in the five actions referred to above.)

2. Claimants' motion to dismiss the limitation proceeding (filed only in the limitation proceeding).

Two additional related cases are pending in this court, both filed by Mariana Torres VDA. De Reyes, et al, one against the vessel owner and the other against its insurer. No motions were filed in these two cases, but counsel for Mariana Torres VDA. De Reyes, et al, joined in a stipulation executed by counsel in the other five cases. This stipulation made translations of a number of unpublished opinions of the Supreme Court of Puerto Rico part of the record of all seven cases. Because the plaintiff in these last two actions has joined in the stipulation and stands *in pari passu* with the other plaintiffs vis-a-vis the vessel owner and its insurer, the motions will be dealt with as relating to plaintiff-claimants in all seven related cases.

The following facts are taken as true for purposes of these motions. Sun Marine Service, Inc., a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico, was the sole owner and operator of the tug LEEBO. The LEEBO departed her home port of San Juan on June 9, 1966 for the island of St. Croix, towing the dredge MIGHTY MANI-

* Sitting by designation.

FRED. She arrived at St. Croix about 11:00 a. m. on June 10, and remained there overnight. She departed St. Croix on June 11, towing the dredge toward the island of Antigua, B. W. I. At about 4:00 a. m. on June 12, when she had arrived at a position approximately 120 miles from Puerto Rico, the MIGHTY MANI-FRED began to sink and sank before the crew of the tug could cut the towline. The sinking of the dredge while still in tow caused the LEEBO to capsize and sink, with the loss of three of the five men aboard and resultant personal injuries to the two survivors.

Three civil actions (333–66, 381–66 and 488–66) were filed against the ship-owner-employer, which thereafter filed a petition for exoneration from or limitation of liability (Civil Action 654–66). An order was entered in the limitation proceeding restraining pending or future suits "against the plaintiff (shipowner) or its property." Each of the plaintiffs filed an answer and verified claim for damages in response to the petition for exoneration from or limitation of liability. Thereafter, all claimants filed civil actions against the shipowner's liability insurer, pursuant to the provisions of the Puerto Rico direct action statute, 26 L.P.R.A. § 2001 et seq. (Civil Actions 51–67, 58–67 and 79–67).

The vessel owner filed a "Stipulation for Value" in the limitation proceeding, reciting that it was the sole owner of the tug LEEBO and that its interest in the LEEBO and her pending freight at the time of her sinking was valued in the amount of $200.00. An attachment to the petition for limitation indicates that the claimants in the civil actions have filed claims for personal injury, wrongful death, and property damage, totaling $1,133,000. Counsel for the claimants have indicated, on the basis of information and belief, that the insurance fund available is in excess of this total amount claimed. The correctness of this assertion is questioned, but not squarely denied, on page 8 of the Memorandum on behalf of the shipowner filed on April 21, 1967.

*The Motion to Consolidate Proceedings, to Vacate Stay and to Defer Limitation Proceedings Until After Jury Trial.*

The motions to vacate the stay entered in the limitation proceeding, to consolidate all seven pending and related cases, to allow all jury trials to proceed, and to defer the trial of the limitation proceeding until after the jury trials, must be resolved in the light of the direct action statute of the Commonwealth of Puerto Rico and a relatively few decided cases.

■ The motion to allow the jury trials to proceed against Sun Marine Service, Inc., owner of the tug LEEBO, may be disposed of summarily. The leading authority in this area is Pershing Auto Rentals, Inc. v. Gaffney, 279 F.2d 546 (5th Cir. 1960), which held that where multiple claims which exceed the limitation fund have arisen out of a marine casualty, the admiralty court having jurisdiction of the limitation proceeding must enjoin any direct actions against the shipowner until after a determination has been made in the limitation proceeding, and I so rule.

The question of whether or not the jury trials may proceed under the direct action statute against the insurer, without awaiting the outcome of the limitation proceeding, offers a much more difficult question for decision.

The leading, but not necessarily the most enlightening, case in the area of the State direct action statutes vis-a-vis Federal admiralty jurisdiction, is the much discussed opinion of the Supreme Court in Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), a case in which the Court divided 4–1–4 in construing the application of the Louisiana direct action statute in a case where the underlying fact situation differed from the facts herein only in that the claims in the Louisiana case exceeded the amount of available insurance. Most commentators have felt that the opinion of the Court was so divided it should be considered an *ad hoc* decision, with little if any value as a

precedent. Cf. Ex parte Tokio Marine & Fire Ins. Co. (Ex parte Aetna Cas. & Surety Co.), 322 F.2d 113, 114 (5th Cir. 1963),

> "* * * persistent proctors * * * since 1954 have hoped longingly for the day in which the 4–1–4 riddle of the Jane Smith (Maryland Casualty Co. v. Cushing) * * * could be authoritatively solved."

Also, cf. Gilmore and Black, The Law of Admiralty, p. 715:

> "Because of the Court's extraordinary division, it is impossible to say what the Cushing case stands for, beyond the fact that it presumably establishes a procedure to be followed by lower courts in handling similar cases until the Supreme Court further clarifies the issues."

■ From the *Cushing* opinion it can be deduced that, at least for purposes of terminating the impending impasse involved therein, a majority of the Court indicated that a State direct action statute does not fatally conflict with Federal limitation of liability laws in such a way as to encroach upon an exclusively Federal area of jurisdiction; more clearly deducible from *Cushing* is an assumption or ruling by a majority of the Court that the writer of a maritime liability insurance policy is not entitled to the protection of the limitation doctrine which admiralty law affords to a shipowner. The reasoning underlying this denial of the benefits of limitation of liability to ship-insurers appears to be the fact that the doctrine of limitation was developed to encourage the investment of private capital in the maritime industry and to encourage investors to make risk capital available in that industry to finance its growth and development, a healthy Merchant Marine obviously being in the national interest. Insurers have not been accorded the unique defense of a limitation proceeding because they have entered into a contractual arrangement with shipowners in which they have, by voluntary contract, agreed to assume various maritime risks which otherwise would fall on the ship-owner, in consideration for which they have received insurance premiums as a presumably adequate *quid pro quo*.

There is a paucity of lower court decisions in this area of the law. The opinions of the Court of Appeals for the Fifth Circuit cited by counsel in their briefs, namely Ex parte Tokio Marine & Fire Ins. Co., Ex parte Aetna Cas. & Surety Co., supra, and Pennell v. Read, 5 Cir., 309 F.2d 455 (1962), offer little guidance to the proper ruling to be made on this motion. However, two decisions in the United States District Court for the Eastern District of Louisiana, namely, In re Independent Towing Company, D.C. 242 F.Supp. 950 (1965), and Alcoa Steamship Co. v. Charles Ferran & Co., D.C., 251 F.Supp. 823 (1966), both written by Judge Ellis, do afford a precedent for resolving this type of controversy.

The relationship between the claimants and the vessel's underwriter in the instant case seems to be on all fours with the relationship between the parties similarly situated in the *Independent Towing* case. There, as here, the crucial decision to be made was whether or not the defense of limitation of liability was a defense personal to the shipowner which only it may claim, on the one hand, or whether, on the other hand, it was a non-personal defense available also to the shipowner's insurer. Judge Ellis reviewed at substantial length the history and development of the doctrine of limitation of liability, both under the civil law on the Continent and at common law, back to the decision of the United States Court for the District of Maine in the case of The Rebecca, 20 Fed.Cas., p. 373, Case No. 11,619, decided in 1831. He considered the history of the limitation statute from its enactment by Congress in 1851 to date. He also cited a list of ten decisions from various courts of the State of Louisiana and one decision of the United States District Court for the Western District of Louisiana, all eleven of which held that an insurer sued under the provisions of the Louisiana direct action statute could not avail it-

self of a variety of defenses which were personal to the insured. On the basis of the history of the development of the limitation doctrine and the cited Louisiana cases, he concluded and ruled that an insurer sued under the Louisiana direct action statute could not take advantage of the defense· of limitation of liability because that defense was a personal defense of the insured.

A study of the translations of the unpublished opinions of the Supreme Court of Puerto Rico, made part of the record in the instant case by the stipulation of counsel referred to above, indicates that the Puerto Rico Supreme Court has consistently, and on every occasion where the issue has been brought before it, ruled that an insurer may not take advantage of a "personal" defense of its insured. No case has been called to the attention of this Court in which the Supreme Court of Puerto Rico has allowed an insurer to take advantage of a defense allegedly personal to its insured in a suit by third parties.

In Trigo v. Travelers Insurance Co., decided March 11, 1965,[1] The Supreme Court of Puerto Rico reviewed at substantial length the legislative history of the present version of the Puerto Rico direct action statute. This opinion establishes that the most recent amendments of the statute, effective since June 19, 1957, were intended to bring the Puerto Rico statute completely in line with the Louisiana direct action statute. The Court said, with reference to Section 20.010, "Liability insurer's liability absolute,"

"In clear and precise terms which require no construction, Section 20.010 of the new Insurance Code established a substantive and absolute liability on the part of the insurer towards the prejudiced party whenever there was a loss covered by the policy, which responsibility was not to depend either upon payment by the insured by virtue of a judgment against him or upon any final judgment against him. Section 20.030 uses a language very similar to that of the Louisiana legislation * * * as creating a substantive liability directly against the insurer in accordance with the construction that, in the same sense, the courts of that State had given to said legislation."

The Court went on to cite with approval a decision of Judge Clemente Ruiz-Nazario of this court, reported as Bosco v. Firemen's Fund Insurance Co., D.C., 171 F.Supp. 432 (1959), and a decision of the New York Court of Appeals reported as Oltarsh v. Aetna Insurance Co., 15 N.Y.2d 111, 256 N.Y.S.2d 577. Both of these cited cases contained rulings that Sections 20.010 and 20.030 created new substantive and direct rights of action against the insurer independent of the cause of action against the tortfeasor-insured.

Subsequent to the decision in Trigo v. Travelers Insurance Co., a number of decisions of the Supreme Court of Puerto Rico have held that various personal defenses which were available to the insured in a suit by the injured plaintiff against him were not available to the insurer when sued by the injured party.

In Garcia, et al v. Northern Assurance Co., decided April 13, 1965, the Supreme Court of Puerto Rico ruled that an insurer could not raise the defense of lack of notice which its assured, a municipality, could have successfully raised in a suit against it. In so doing the Puerto Rico Supreme Court relied heavily upon the decision of the Supreme Court of Louisiana in Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191 (1935).

A number of rulings have been made by other judges of this court denying the use of personal defenses of the insured to the insurer. In Sanchez, et al v. Carolina Casualty Insurance Co., in an order filed January 15, 1963, then Chief Judge Ruiz-Nazario ruled that an insurer may not raise the defense of lack of notice or non-cooperation by the insured in a suit brought under the direct action statute.

---

1. Counsel did not supply official citations for the translated opinions.

In Jose Gomez Ujaque v. American Fire & Casualty Co., in an order filed June 12, 1964, he ruled that an insurer may not raise the defense of sovereign immunity in a direct action against it. In Schenkman v. Travelers Indemnity et al., decided January 12, 1967, Chief Judge Hiram Cancio ruled that an insurer may not raise the defense of inter-spousal immunity in a case brought under the direct action statute arising out of an automobile accident in which the husband was the driver and the wife-passenger was injured.

These decisions of the Supreme Court of Puerto Rico and of this court establish that since 1957 the Puerto Rico direct action statute has been consistently construed, in both State and Federal courts, in such a way as to deny to an insurer the use of defenses personal to its insured. A comparison of the decisions in Louisiana under its direct action statute with the decisions in Puerto Rico under its direct action statute persuades me that the legislative history of the Puerto Rico direct action statute, as explained by the Supreme Court of Puerto Rico, leaves no room for argument that the legislature of Puerto Rico intended that its direct action statute be of any different force and effect whatsoever than the direct action statute of Louisiana. This, in turn, leads to the inevitable conclusion that the construction given to the Louisiana direct action statute in the *Independent Towing* and the *Alcoa Steamship* cases, supra, should be given to the Puerto Rico direct action statute in the instant case.

I rule that the defense of limitation of liability for purposes of the Puerto Rico direct action statute, 26 L.P.R.A. § 2001 et seq., is a defense which is personal to the shipowner and is not available to the vessel's insurer. Consequently, plaintiffs may proceed to jury trial in the three cases filed against the insurer without waiting for a trial and entry of judgment in the limitation proceeding.

Order accordingly.