Juana **BARRIOS**, Maria Rosado and Candido Rosado, Plaintiffs,

v.

**DADE COUNTY OF the STATE OF FLORIDA, the Dade County Port of Authority, and The Travelers Insurance Company and The Travelers Indemnity Company a/k/a The Travelers, Defendants.**

**No. 69 Civil 2428.**

United States District Court
S. D. New York.
Jan. 7, 1970.

Melvin W. Knyper, New York City, for plaintiffs, Howard Schaerf, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants, Douglas B. Bowring, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This case in one aspect presents still another variant of the much-discussed and oft-criticized Seider v. Roth decision [1] of the New York Court of Appeals —here a direct action against the insurer in the absence of a direct action statute either in New York or the state of occurrence of the accident.

Plaintiffs, residents of New York, commenced this action in the New York

---

[1]. 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).

State Supreme Court to recover damages for personal injuries sustained as a result of an accident which occurred at the Miami International Airport, Florida. The defendants Dade County of the State of Florida and The Dade County Port of Authority, the owner and operator respectively of the airport, are charged with negligent conduct in its maintenance and operation. The defendants The Travelers Insurance Company and The Travelers Indemnity Company (hereafter referred to collectively as The Travelers or the insurer) issued a policy of liability insurance to Dade County and The Dade County Port of Authority covering claims or actions for personal injuries such as those advanced by plaintiffs.

The Travelers, which is licensed to do business in New York State and maintains an office in this city, was served with process by service upon the Superintendent of Insurance of the State of New York.[2] The validity of this service and jurisdiction over that defendant is not challenged.

In rem jurisdiction was acquired over Dade County and The Dade County Port of Authority under an order of attachment and a levy made in this state upon the debt arising under the policy of insurance issued by The Travelers. Each defendant was served with a summons and complaint in furtherance of the attachment. The service and attachment procedure conformed to that approved by the New York Court of Appeals in Seider v. Roth, and subsequently upheld as constitutionally valid by that court in Simp-

son v. Loehmann[3] and by our Court of Appeals in Minichiello v. Rosenberg.[4]

The action was removed to this court upon a removal petition alleging diversity of citizenship between the plaintiffs and the defendants. The respective defendants thereafter filed their answers and the matter is now before the court on the plaintiffs' motions (1) to remand the action to the state court, and (2) to dismiss various affirmative defenses interposed by the defendants. All the defendants cross-move (1) to transfer the action to the Southern District of Florida pursuant to 28 U.S.C., section 1404(a), and The Travelers cross-moves (2) to dismiss the action against it pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, thus presenting the novel aspect of the Seider v. Roth concept.

■ Plaintiffs' motion to remand must be denied. Despite plaintiffs' contention that no diversity exists, the facts are otherwise. The Travelers was and is a Connecticut corporation with its principal place of business at Hartford, Connecticut.[5] Plaintiffs' feeble assertion that because it maintains an office in this city it has its principal place of business here is without substance.[6] As to the Dade County defendants, it is undisputed they are corporate entities or political units of the State of Florida.[7] Diversity jurisdiction exists, and consequently the motion to remand must be denied.

■ The plaintiffs next move to strike the first affirmative defense of the Dade

---

2. *See* N.Y. Insurance Law § 59 (McKinney 1966).

3. 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), *motion for reargument denied*, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968) (per curiam).

4. 410 F.2d 106 (2d Cir. 1968), *upheld on rehearing en banc, id.* (1969). Both courts are in accord that the in rem jurisdiction acquired over the insured defendant through the attachment of the debt arising out of the contractual ob-

ligation under the policy cannot exceed the face amount of the policy.

5. *See* 28 U.S.C. § 1332(c) (1964).

6. *See* Egan v. American Airlines, Inc., 324 F.2d 565 (2d Cir. 1963); *cf.* Scot Typewriter Co. v. Underwood Corp., 170 F. Supp. 862 (S.D.N.Y.1959).

7. *See* Hopkins v. Clemson Agricultural College, 221 U.S. 636, 644-646, 31 S.Ct. 654, 55 L.Ed. 890 (1911); Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

County defendants, which alleges the complaint fails to state a claim against them upon which relief can be granted. This affirmative defense appears to be frivolous: the complaint contains the usual allegations charging the defendants with negligent breach of duty in the maintenance and operation of the airport, proximate cause, resulting damages, and plaintiffs' freedom from contributory negligence, and further alleges compliance with the statutory notice requirements upon these defendants and their failure to adjust the claim. The plaintiffs' motion to strike the first affirmative defense of the Dade County defendants is granted.

■ The plaintiffs also move to strike the third, fourth and fifth affirmative defenses interposed by the Dade County defendants, which in substance challenge the constitutional validity of the Seider v. Roth procedure upon the grounds of (1) denial of due process of law, (2) undue burden upon interstate commerce, and (3) impairment of the validity of the contract of insurance. Precisely these three claims of constitutional infirmity have been advanced before and rejected by the New York Court of Appeals [8] and our Court of Appeals.[9] Nonetheless, the issue is not free from doubt [10] and has not been finally resolved by the highest court of the land. In this circumstance, it would appear that to preserve the constitutional claim, these defenses should be permitted to stand even though, as long as *Simpson*

and *Minichiello* remain undisturbed, the defenses will be of no avail to the defendants.

■ Next, we reach the latest ramification of Seider v. Roth. Plaintiffs allege a claim directly against The Travelers based upon the essential allegations of the negligence claim against the Dade County defendants, "in the event that a direct action against the insurance company is sanctioned * * *." The Travelers seeks dismissal of the action against it on the ground that under existing New York law, which is controlling on this issue under Erie R.R. v. Tompkins,[11] an insurance company may not be sued directly for the negligence of its insured absent a "direct action" statute such as the Supreme Court upheld in Watson v. Employers Liability Assurance Corp.[12] It emphasizes that neither New York nor Florida has a direct action statute and accordingly contends that New York would not countenance this action. Plaintiffs cross-move to strike The Travelers' affirmative defense.

There is no decision by the New York courts on this precise point; thus, the Court is called upon to forecast whether New York would be hostile to the maintenance of the direct claim against the insurer. The underlying rationale of Seider v. Roth and related cases which followed it indicate that no public policy of the state would prohibit the maintenance of this suit and indeed to the contrary that it would be favored.[13] Even

---

8. Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), *motion for reargument denied*, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968) (per curiam).

9. Minichiello v. Rosenberg, 410 F.2d 106 (2d Cir. 1968), *upheld on rehearing en banc, id.* (1969).

10. See Simpson v. Loehmann, 21 N.Y.2d 305, 314–317, 287 N.Y.S.2d 663, 234 N.E. 2d 669 (1967) (Breitel & Bergan, JJ., concurring); *id.* at 317–321, 287 N.Y.S. 2d 663, 234 N.E.2d 669 (Burke & Scileppi, JJ., dissenting); Minichiello v. Rosenberg, 410 F.2d 106, 113–117 (2d Cir. 1968) (Anderson, J., dissenting); *id.* at

120–122 (1969) (Anderson & Moore, JJ. & Lumbard, C. J., dissenting).

11. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

12. 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954).

13. *Cf.* Minichiello v. Rosenberg, 410 F.2d 106, 109 (2d Cir. 1968); *id.* at 113 (Anderson, J., dissenting); Simpson v. Loehmann, 21 N.Y.2d 305, 312–314, 287 N.Y.S.2d 663, 234 N.E.2d 669 (1967) (Keating, J., concurring) (*Seider* in effect sets up a judicially-created direct action). *See also* Seider v. Roth, 17 N.Y.2d 111, 114–115, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966).

more direct support for the present action is found in Oltarsh v. Aetna Insurance Co.,[14] decided one year before *Seider*, where the New York Court of Appeals permitted New York residents injured in Puerto Rico to bring a direct action against the insurer in the New York courts. Puerto Rico had a direct action statute. New York applied that statute under a conflict of laws doctrine, enforcing a substantive right of the injured person to sue the insurer directly.[15] Although New York had no similar law permitting the direct suit, it held such a suit was not offensive to any public policy of the state.

While it is true that Florida has no such statute, its highest court, in Shingleton v. Bussey,[16] recently permitted a direct action against the insurance company despite the absence of a state law authorizing such a suit. In so doing, the Florida Supreme Court overruled prior decisions and stated: "We conclude a direct cause of action now inures to a third party beneficiary against an insurer in motor vehicle liability insurance coverage cases as a product of the prevailing public policy of Florida."[17] The actual holding of *Shingleton* is limited to direct actions against automobile liability insurers, whereas the present action involves a general indemnity insurer. Although the peculiar role of automobile liability

insurance and the state's Financial Responsibility Law played some role in the Florida court's reasoning, other aspects of its reasoning are sufficiently generalized to permit a direct action in the present context as well.

The Travelers seeks to overcome the force of *Shingleton* by claiming that the holding there was procedural and hence unenforceable in this Court, particularly since New York's substantive law authorizes a direct action against the insurer only where a judgment against the insured remains unsatisfied for thirty days.[18] But its arguments are not persuasive. First, a fair reading of the Florida holding indicates that it recognizes a substantive right in an injured person as a third party beneficiary of the insurance policy to recover directly from the liability insurer of the tortfeasor. Florida, no less than Puerto Rico, created "a separate and distinct right of action against the insured where no such right had previously existed and thus effected a radical change in the rights accorded injured persons."[19] Once having created this substantive right, the Florida court decided that under its practice and procedure the injured person could join the insurer as a codefendant in the action against the claimed tortfeasor. But the basic holding created a substantive right. That the right was "judicially" rather "legislatively" created does not detract from its force.[20]

14. 15 N.Y.2d 111, 256 N.Y.S.2d 577, 204 N.E.2d 622 (1965).

15. *See id.* at 116, 256 N.Y.S.2d at 580, 204 N.E.2d at 624:
"[T]he [Puerto Rican] statute created a separate and distinct right of action against the insurer where no such right had previously existed * * *.
"There can be no doubt * * * that such direct action legislation transcends mere procedure and, indeed * * * we implicitly recognized the substantive character of the somewhat similar Louisiana direct action statute for purposes of the conflict of laws. [citations omitted] And, although it is a settled rule that the forum undertakes its own characterization of a foreign statute * * * it is relevant that the United States Court of Appeals

for the circuit which includes Puerto Rico has treated the Commonwealth's direct action statute as substantive for purposes of the *Erie* doctrine * * *. A principal *Erie* purpose, like that of the conflict of laws, is to assure, so far as possible, that the result in a particular case is the same regardless of forum."

16. 223 So.2d 713 (Fla.1969).

17. *Id.* at 715.

18. *See* N.Y. Insurance Law § 167 (McKinney 1966).

19. Oltarsh v. Aetna Ins. Co., 15 N.Y.2d 111, 116, 256 N.Y.S.2d 577, 204 N.E.2d 622 (1965) ; *see* note 15 *supra*.

20. *See, e. g.,* Kaufman v. American Youth Hostels, 6 A.D.2d 223, 177 N.Y.S.2d

Second, as to the contention that absent a judgment against the assured unpaid for thirty days, New York's Insurance Law would prohibit this suit, the New York Court of Appeals in *Oltarsh* explicitly rejected such an argument where a direct action was otherwise authorized by applicable foreign law.[21] Thus, with New York receptive to direct actions by its residents against insurers arising from out-of-state accidents, at least when direct actions are authorized by the situs state,[22] and with Florida, the place where the accident occurred, granting the right to maintain such suits, there is at present no basis for any claim that New York State policy would be offended by this action. The motion to dismiss as to The Travelers is denied. However, since *Shingleton* did not rule upon the precise issue of a general liability insurer under Florida law, although the rationale of the opinion would seemingly extend thereto, the motion to strike this affirmative defense is also denied, pending subsequent developments in this fluid field which may indicate a different result.

■ Finally, we consider the defendants' motion for transfer under 28 U.S. C., section 1404(a). The defendants list five persons, all said to be witnesses, and all residents of Florida, whom they plan to call upon the trial. Two are officials of the airport, the airport supervisor and the Assistant General Counsel of the Port Authority; two are police officers; and the fifth has no official relationship either to the Port Authority or to Dade County. The defendants do not allege that any of these persons witnessed the accident or that they can testify to the circumstances of its occurrence. They do not set forth the substance of each individual witness' anticipated testimony, except for the general statement that they and others (unnamed) talked to the plaintiffs immediately after the accident and some of them also examined the area where plaintiffs claimed to have fallen, and all will testify to conditions they observed. This general and conclusory statement of purported testimony without any indication of the competency of the witnesses or the relevancy of their testimony is insufficient to establish they are essential witnesses.[23] Indeed, upon the face of the allegations, doubt arises they are. The charge by the plaintiffs that none of the persons named by the defendant was an eyewitness is unchallenged. On the other hand, the plaintiffs, who were involved in the occurrence, were eyewitnesses and are essential witnesses. In addition, it appears without contradiction that three doctors, two of whom treated one or more of the plaintiffs, are residents of this city. It certainly is more desirable that they appear before the trier of the fact than to have their depositions read.[24]

As to those witnesses who defendants allege will testify to maintenance procedures at the airport and place of occurrence, while their testimony may be relevant on the issue of negligence, it is no more so than that of the actual eyewitnesses and treating physicians. At the same time, all but one of the named witnesses are under the control of defendants and can be brought to New York if their live testimony is deemed more desirable than their deposition testimony. Taking into account all these

---

587 (1958), *modified on other grounds*, 5 N.Y.2d 1016, 185 N.Y.S.2d 268, 158 N.E.2d 128 (1959); *cf.* Erie R. R. v. Tompkins, 304 U.S. 64, 78–79, 58 S.Ct. 817 (1938).

21. Oltarsh v. Aetna Ins. Co., 15 N.Y.2d 111, 119, 256 N.Y.S.2d 577, 204 N.E.2d 622 (1965). *See also id.* at 118, 256 N.Y.S.2d 577, 204 N.E.2d 622.

22. *See also* note 13 *supra*.

23. Breindel v. Levitt & Sons, 294 F.Supp. 42, 43 (E.D.N.Y.1968); Thomson & Mc-Kinnon v. Minyard, 291 F.Supp. 573, 576 (S.D.N.Y.1968); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F. Supp. 744, 756–757 (S.D.N.Y.1966).

24. *Cf.* Lago Oil & Transp. Co. v. United States, 97 F.Supp. 438, 439 (S.D.N.Y. 1951); V. O. Machinoimport v. Clark Equip. Co., 11 F.R.D. 55, 58 (S.D.N.Y. 1951).

circumstances, upon balance, factors of convenience and the interests of justice require that the motion for transfer be denied.[25]

---

25. Defendants also allege that, in the event they are held to be negligent, they will have a third-party claim over against another Florida corporation that was responsible for maintenance of the airport under contract to the Dade County Port of Authority; that the maintenance corporation is not suable in New York; and that unless the action is transferred defendants will be deprived of their opportunity to assert a proper claim against the ultimately responsible party. But in the event of judgment against them in this action, the defendants are not foreclosed from suing in the Florida courts for indemnity. And the rights of these plaintiffs should not be prejudiced by the existence of a purported contract between strangers, to which they were not a party. *Cf.* Jones v. United States, 304 F.Supp. 94, 97 (S.D.N.Y.1969).