Anibal RUIZ RODRIGUEZ, Plaintiff,

v.

LITTON INDUSTRIES LEASING CORP. and United Kingdom Mutual Steamship Association, Ltd., Defendants.

Leocadio MARQUEZ RESTO, Plaintiff,

v.

LITTON INDUSTRIES LEASING CORP. and United Kingdom Mutual Steamship Association, Ltd., Defendants.

Cleto PAGAN CLEMENTE, Plaintiff,

v.

The UNITED KINGDOM MUTUAL STEAMSHIP (BERMUDA) LTD., Defendant.

Luis B. ORTIZ DURAN, Plaintiff,

v.

LITTON INDUSTRIES LEASING CORP. and the United Kingdom Mutual Steamship (Bermuda) Ltd., Defendants.

Victoria STEVENSON et al., Plaintiffs,

v.

LITTON INDUSTRIES LEASING CORP. et al., Defendants.

Tomas ECHEVARRIA ORTIZ, Plaintiff,

v.

CONTAINERSHIP CHARTERING SERVICE et al., Defendants.

Pedro CENTENO SANTOS, Plaintiff,

v.

COASTAL SHIPPING CORPORATION et al., Defendants.

Civ. Nos. 446–70, 569–71, 808–71, 71–72, 192–72, 619–72 and 615–67.

United States District Court, D. Puerto Rico.

March 14, 1977.

Gustavo A. Gelpi and Feldstein, Gelpi, Toro & Hernandez, San Juan, P. R., for plaintiffs.

Vicente M. Ydrach and Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, San Juan, P. R., and Daniel J. Dougherty and Kirlin Campbell & Keating, New York City, for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

These cases have been consolidated for purposes of considering Defendants' Motions for Summary Judgment which raise one issue: whether an employee covered by the Puerto Rico State Insurance Fund can invoke Puerto Rico's Direct Action Statute, 26 L.P.R.A. 2001 et seq., against an insurer of a State Insurance Fund—insured employer.

Defendants aver that an insurance company can not be found liable for damages suffered by an employee unless a valid cause of action exists against the insureds, and that Puerto Rico's Direct Action Statute, 26 L.P.R.A. 2001 et seq., is inoperative in any Puerto Rico maritime case where there is a direct employment relationship and where compensation has been paid.

Plaintiffs retort that a claim against an insurance company invoking the direct action statute is not derivative in nature, but rather a separate and independent action not depending on a finding of liability regarding the insured or the existence of a valid cause of action against same. They further argue that notwithstanding the re-

ceipt of some compensation from the State Insurance Fund, the proposition that full reparation ensues from the meager statutory benefits received by injured workers cannot be sustained.

The material facts with which the Court is concerned are as follows:

Plaintiffs are all longshoremen who were working aboard certain merchant vessels which some Defendants own and others insure. These vessels had been demise or "bareboat" chartered to Sea Land Service, Inc. who employed all Plaintiffs.[1] The accidents occurred while the vessels were under demise charter to Sea Land, which is an insured employer under Puerto Rico Workmen's Compensation Act, 11 L.P.R.A. 21. Compensation has been paid to each injured longshoreman by operation of the Act.

Title 11 L.P.R.A. 21 reads in part:

"When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; . . ."

■ It can be safely concluded that once the Act comes into operation, it is the sole remedy of the injured worker *vis-a-vis* his employer. *Alcoa v. Pérez Rodríguez*, 376 F.2d 35 (C.A. 1, 1967), cert. denied 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967); *Flores v. Prann*, 175 F.Supp. 140 (D.P.R., 1959); aff'd 282 F.2d 153 (C.A. 1, 1960), cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961). However, the Act itself does not preclude the same injured worker from bringing an action against a third party *responsible* for such injury.

Section 32 of Title 11 L.P.R.A. reads, as is pertinent:

"In case where the injury, the professional disease, or the death entitling the workman or employee or their beneficiaries to compensation in accordance with this chapter has been caused under circumstances making a third party *responsible* for such injury, disease, or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party *responsible* for said injury, disease, or death . . . . " (Emphasis supplied).

In this respect, there is no absolute prohibition mandated by the Act of a cause of action being instituted against a third party. Whether or not a co-insurer of the employer may be sued as a third party is a dilemma considered by the Direct Action Statute, 26 L.P.R.A. 2001 et seq. Part of that statute reads as follows:

"The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, or damage to property of a third person, shall become absolutely liable *whenever a loss covered by the policy occurs*, and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such occurrence." (Emphasis supplied).

We must first determine, following the reasoning of 11 L.P.R.A. 32, if the insurer is responsible as a third party for compensable injuries, and if it may be, whether or not

---

1. In admiralty, the demise charterer is referred to as the owner *pro hac vice*. See *Reed v. The Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, reh. denied 375 U.S. 872, 84 S.Ct. 27, 11 L.Ed.2d 101 (1963). The charter party is consequently tantamount to, although just short of, an outright transfer of ownership. *Guzmán v. Pichirilo*, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). Valid demises having been created herein in all cases, we discount any possible liability the actual owner may have for unseaworthy conditions arising after he has parted with control over his vessel. *Ramos v. Beauregard, Inc.*, 423 F.2d 916 (C.A. 1, 1970), cert. denied 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d

104 (1970); *Vitozi v. Balboa Steamship Co.*, 163 F.2d 286 (C.A. 1, 1947), and see *Ruiz Pichirilo v. Maysonet Guzmán*, 290 F.2d 812 (C.A. 1, 1961), rev'd on other grounds, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962). That being so there is no factual or legal basis for holding such insurer liable to Plaintiffs. *Ramos v. Beauregard, Inc.*, supra. Plaintiffs aver that in two cases the negligence and unseaworthiness preceded the demise. While we agree that such a cause of action is possible (see *Nat G. Harrison Overseas Corp. v. American Tug Titan*, 516 F.2d 89, 96 (C.A. 5, 1975) ) our perusal of the amended complaints reveals no such clear allegations.

this type of injury is a loss covered by the contract of insurance, in this case a protection and indemnity agreement.

Article 20.030 of the Insurance Code, 26 L.P.R.A. 2003(1), reads thus:

"Any individual sustaining damages and losses shall have, at his option, a direct action against the *insurer under the terms and limitations of the policy*, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. *The liability of the insurer shall not exceed that provided for in the policy*, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be *subject to the conditions of the policy or contract* and the defenses that may be pleaded by the insurer to the direct action instituted by the insured." (Emphasis supplied).

Defendants argue that the defense of the insured employer of statutory immunity is not personal in nature and that historically speaking, no support can be found for the proposition that the exclusive remedy of compensation is "personal." The creation of a personal defense *vel non* stems from the above cited section. Although the Courts have made no set rule as to what is or is not a personal defense, examples abound. In *Edwards v. Royal Indemnity Co.*, 182 La. 171, 161 So. 191 (1935), cited in *Dandridge v. Fidelity & Casualty Co.*, 192 So. 887 (La.App., 1939), the Court gave some examples of these defenses: minority, interdiction, coverture, or that it is contrary to the Civil Code for a minor to sue a father for damages or a wife to sue her husband in tort. See also *Alcoa Steamship Co. v. Charles Ferran & Co.*, 251 F.Supp. 823 (E.D. La., 1966), aff'd 383 F.2d 46 (C.A. 5, 1967), cert. denied 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). In a limitation of liability case, *Olympic Towing Corporation v. Nebel Towing Company*, 419 F.2d 230 (C.A. 5, 1969), cert. denied 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), the Court quoted part of *Alcoa*, supra.

"Amongst these apparently varied 'personal' defenses, one common denominator is discernible—each person possessing a 'personal' defense obtained that defense because the law granted it to all members of his class as a matter of public policy. The personal defense attaches to the status. Hence parents, children, husbands, wives, governmental units, charitable organizations, bankrupts, lunatics, interdicts, vessel owners, and the like possess a defense denied their respective insurers."

The Supreme Court of Puerto Rico has recognized that, notwithstanding the existence of a separate cause of action under 26 L.P.R.A. 2001 et seq., an insurer can not use those defenses which are personal or private to the insured. *Morales v. Lizarribar*, 100 P.R.R. 717 (1972).[2] The Court does not take issue with the theory of "personal" defense. It would seem to follow that, after an analysis of Louisiana and Puerto Rico legislation, the insurers herein are precluded from raising the defense of statutory immunity which the insured employer may raise. That may well be so. However, there is nothing in the case law

---

**2.** Thus, an insurer has been barred from raising as a defense the fact that no notice of the accident was served to its insured, a municipality, as required by the Commonwealth of Puerto Rico Municipal Law, 21 L.P.R.A. 1603. *Torres Pérez v. Colón García*, C.A. # 6, Jan. 18, 1977; *Insurance Co. of P. R. v. Superior Court*, 100 P.R.R. 404 (1972); *García v. Northern Assurance Co.*, 92 P.R.R. 236 (1965); *Rodríguez v. Maryland Casualty Company*, 369 F.Supp. 1144 (D.P.R., 1971); Rule 44.4(e), P.R. Rules of Civil Procedure; a ship owner has the defense, personal in nature, of limitation of liability. See *Torres v. Interstate Fire and Cas-*

*ualty Company*, 275 F.Supp. 784 (D.P.R., 1967); a final judgment against an insured is *res judicata* (personal defense), see *Barrientos v. Gobierno de la Capital*, 97 P.R.R. 539 (1969); the insurer fails to comply with the notice requirement under the policy. See *González v. Caribbean, Ltd.*, 379 F.Supp. 634 (D.P.R., 1974); immunity granted an insured employer is not to be extended to officials, administrators or other employees of such employer. *López Rodríguez v. Delama*, 102 D.P.R. 254 (1974); parental immunity is a personal defense. *Drahus v. Nationwide Mutual Ins. Co.*, C.A. # 134, Sept. 17, 1975.

cited by Plaintiff pursuant to its argument on personal defenses, that suggests any basis for holding an insurer liable when there is no cause of action against its insured. See *Ramos v. Continental Insurance Co.,* 493 F.2d 329 (C.A. 1, 1974) n. 4; *Gómez Vázquez v. Litton Industries Leasing Corp.,* 67 F.R.D. 117 (D.P.R., 1975) (dicta). The argument of personal defenses, although relevant, is not convincing and certainly not controlling, particularly applying such a theory to the fact pattern before us. In this respect, federal legislation in this field, particularly the Longshoremen's & Harborworkers' Compensation Act, 33 U.S.C. 901 et seq. as amended, reveals a public policy similar to that of Puerto Rico legislation in the workmen's compensation field. Although LHWCA does not apply to Puerto Rico (see *Alcoa v. Pérez Rodríguez,* supra), cases interpreting its operation with state compensation laws follow a distinct pattern.

In *Nations v. Morris,* 483 F.2d 577 (C.A. 5, 1973), the Court dealt with the question of whether a fellow employee could raise a personal defense of the insured employer or whether the defense inhered in the nature of the obligation. Citing *Olympic Towing Corp. v. Nebel Towing Co.,* supra and *Dandridge,* supra, the Court determined that the defense of the employer granted by the workmen's compensation and thus could be asserted by the liability insurer. This decision was later followed in *St. Julien v. Diamond M. Drilling,* 403 F.Supp. 1256 (E.D.La.1975) where it was held that the exclusive liability provisions of the LHWCA bar a direct action against the employer's insurer as well as a suit against the employer.

Let us turn now to the nature of the obligation existing between the bareboat charterer and its insurer. The same is entitled a protection and indemnity agreement, the premiums or calls of which are determined pursuant to the entered tonnage of the vessel under Rule 13 of the 1969 Rules stipulated as controlling herein by the par-

ties. By multiplying the entered tonnage by the premium rating per entered ton for assessment of calls, one may calculate the yearly premium paid. Regarding coverage, the 1969 Rules of U.K. (Bermuda) contain the following:

RISKS COVERED

34 . . . DAMAGES OR COMPENSATION FOR LOSS OF LIFE OF OR PERSONAL INJURY TO OR ILLNESS OF:

(1) Any person in or on board or near an entered ship, including hospital, medical or funeral expenses, *for which an owner may in consequence be liable,* arising out of the negligent act or omission on bard of or in relation to the entered ship, or for which an Owner may be liable under the terms of an indemnity given by him to the owners or operators . . . of any dock or drydock; . . . " (Emphasis supplied).

The wording of the contract is clear and the wording of the direct action statute is precise concerning this point.

"The insurer . . . shall become absolutely liable *whenever a loss covered by the policy occurs,* and payment of such loss by the insurer to the extent of its liability therefor under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such consequence." (Emphasis supplied).

Whether a loss is covered by the contract depends upon the existence of a cause of action against the vessel owners, as is clear from its wording. Plaintiffs' Motion of October 7, 1976 differs with this conclusion, and avers that the cause of action exists independently of the employer's immunity under Puerto Rican law by virtue of the maritime law. How Plaintiff can reconcile this argument with the view expressed in *Alcoa v. Pérez Rodríguez,* supra, is not clear. That Court held the following:

"We adhere to the views expressed in our prior opinion[3] to the effect that

---

**3.** The Court is referring to *Guerrido v. Alcoa Steamship Co.,* 234 F.2d 349 (C.A. 1, 1956), which established in Puerto Rico the longshore-

man's right to an action against a third party responsible for his injuries under the doctrine of unseaworthiness.

Puerto Rico's Workmen's Accident Compensation Act has, within the area of its applicability, displaced the remedies of the maritime law, including the Federal Longshoremen's Act and provides the sole remedy of Puerto Rican longshoremen against [their] employer for injuries sustained in the course of [their] employment." 376 F.2d 35, 38.

Although we note that LHWCA does not apply to Puerto Rico, we believe that this Court should give effect to exclusivity features within the state workmen's compensation law that are comparable to those found in the federal law. *Murphy v. Woods Hole, Martha's Vineyard, Etc.*, 545 F.2d 235 (C.A. 1, 1976). In so doing, we find the same type of public policy involved in both compensation acts. The employer pays premiums and avoids the rigors of court actions while the employee foregoes his right to bring an action in tort and need not prove either unseaworthiness or negligence to receive compensation. The latter receives recompense even if he is comparatively or solely negligent. The scheme of the act precludes the existence of any cause of action against his employer, while not impinging upon the employee's right to bring a third party action against the vessel, its owner, and its insurer, if the vessel is not the employer as it is herein.

Finally, Plaintiffs argue that the policies herein considered are marine policies, not unlike those before the Court in *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (C.A. 5, 1973). This Court has previously found, citing *Parfait*, that the operation of the direct action statute may be invoked against a marine insurance policy and that the right created by the direct action statute cannot be denied against this type of insurer while extending it to others. *González v. Caribbean Carriers, Ltd.*, 379 F.Supp. 634 (D.P.R., 1974). We disagree. By the mere fact that a protection and indemnity agreement exists, Defendant U.K. (Bermuda) cannot be submitted to a contractual obligation beyond the parameters of the specific contract in question. This is clear from a literal interpretation of the wording of the direct action statute attributing to those words their most common and ordinary meaning. To invoke *Parfait* and *González* as dogmatic is to indulge in unsound judicial license. We are not willing to do so.

In view of the above, Defendants' Motions for Summary Judgment are granted.

The Clerk of the Court is instructed to enter Judgment dismissing these actions, with prejudice and without imposition of costs.

IT IS SO ORDERED.