Ruben MORALES, Plaintiff,

v.

PUERTO RICO MARINE MANAGE-MENT, INC., Puerto Rico Maritime Shipping Authority, and "X" Insurance Company, Defendants and Third Party Plaintiffs,

v.

JACKSONVILLE PORT AUTHORITY and the Travelers Insurance Companies, Third Party Defendants.

Civ. No. 77–1428.

United States District Court, D. Puerto Rico.

July 16, 1979.

Harry A. Ezratty, San Juan, P. R., for plaintiff.

Herbert W. Brown, III, Francisco Bruno Rovira, San Juan, P. R., for defendants and third party plaintiffs.

## OPINION AND ORDER

TORRUELLA, District Judge.

Plaintiff initiated this action on September 27, 1977 against the Puerto Rico Marine Management, Inc. and Puerto Rico Maritime Shipping Authority, owners and operators of the vessel SS GUAYAMA. The action was based on the general maritime claim of unseaworthiness [1] and on a negligence claim under Section 33 of the Jones Act. 46 U.S.C. 688. Succinctly, the complaint alleges that Plaintiff, who was a seaman on the SS GUAYAMA, suffered an accident while the vessel was docked at Jacksonville, Florida on August 10, 1977. He assertedly fell through an excavation on the pier which was the result of certain construction work being carried on by the Jacksonville Port Authority.

On September 14, 1978 the Defendants brought a third-party complaint against the Jacksonville Port Authority (hereinafter referred to as "the Authority"). It was therein alleged that the Authority owned, controlled, managed and otherwise maintained the pier facilities in which Plaintiff suffered the aforesaid accident, and that the injuries allegedly suffered by Plaintiff were due to its negligence. Service of process on third party Defendant was attempted through the Secretary of State of the Commonwealth of Puerto Rico, in accordance with the Puerto Rico Long Arm Statute, Rule 4.7 of the P.R. Rules of Civ.P., 32 L.P.R.A. App. II. The petition for substitute service was grounded on the assertion that the Authority, although not domiciled within this district, has carried business activities in the jurisdiction.

On January 12, 1979 the Authority made a special appearance contesting service of process and requesting that the same be quashed. An affidavit by its Managing Director, John R. MacKroth, was submitted in support of third party defendant's Motion.

The third party Plaintiffs, apparently conceding that *in personam* jurisdiction over the authority cannot be obtained, proceeded to file an amended third party complaint setting forth a direct action against the Authority's insurer, The Travelers Insurance Company (hereinafter referred to as "the insurer") pursuant to Section 20.030 of the Insurance Code of Puerto Rico. 26 L.P.R.A. 2003. Service was made upon an officer of the insurer's claims Department at its office in Santurce, Puerto Rico.

The insurer has also challenged the *in personam* jurisdiction of this Court. Additionally, dismissal of the claims against it is requested on the ground that the complaint fails to state a claim for relief under the direct action statute of Puerto Rico, *supra*.

We rule, at the outset, that the Authority's challenge to the substitute service of process must be upheld. The Defendants never controverted the facts attested to in the MacKroth's affidavit. Said sworn statement specifically disclaims each and every one of the factors which would permit substitute service under the Long Arm Statute of Puerto Rico. There is simply no significant connection between the alleged actions of the Authority and the Commonwealth of Puerto Rico as would satisfy the applicable statutory and constitutional prerequisites to the exercise of long arm jurisdiction.[2] See, *International Shoe Co. v.*

---

1. This aspect of the suit was the subject of an Order of dismissal filed on April 6, 1978.

2. Rule 4.7 of the P.R. Rules of Civ.P. provides in part:

"(a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said nonresident as if he were a resident of the Commonwealth of Puerto Rico, *if the action or claim arises as a result of the following:* . . ."

*State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Absent any of those *sine qua non* requirements, the process attempted to be served upon the Authority through the Secretary of State of Puerto Rico must be, and the same is hereby quashed. See, *Medina v. Tribunal Superior,* 104 D.P.R. 346, 354 (1975); Cf. *Claudio v. Casillas Mojica,* 100 D.P.R. 761, 772 (1972).

The insurer's "Motion to Dismiss for Lack of In Personam Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted" does present novel and interesting questions of law which have not been addressed by the Supreme Court of Puerto Rico. To those we shall now turn our attention.

Movant contends that an assertion of jurisdiction over the insurer would contravene the applicable principles of "fair play and substantial justice", since this Court lacks jurisdiction over the insured and the insurance contract was issued outside of Puerto Rico. It is further argued that the sphere of application of the Puerto Rico direct action statute cannot be extended to an insurance company where, as here, the accident and the contract take place elsewhere.

Defendants retort that since the insurer does business in Puerto Rico and service was effectuated upon one of its agents here, there exists *in personam* jurisdiction over this third party Defendant. Moreover, Defendants advance the proposition that the Commonwealth has an interest in actions involving insurance policies written outside of the jurisdiction and accidents occurring not within its confines by reason of the domicile in Puerto Rico of the injured party. Hence, according to Defendants, the third party claims against the insurer can be brought directly pursuant to 26 L.P.R.A. 2003 under the factual circumstances of the case at bar.

We will discuss each of the two aspects raised by the insurer's Motion in turn.

**PERSONAL JURISDICTION OVER THE INSURER:**

■ Pursuant to the authority granted in F.R.Civ.P. 4(d)(7), the summons and complaint in this case were served upon a local officer of the insurer in the manner prescribed by Rule 4.4(e) of the P.R.Rules of Civ.P.[3] No question of extraterritorial or substitute service upon a non-resident Defendant is thus presented as regards this party, since the insurer concededly does business in Puerto Rico. Rather, our inquiry shall center on whether the Commonwealth has provided for the exercise of judicial power over a foreign corporation which does business in Puerto Rico, where the cause of action sued upon is entirely unrelated to its business activities in this jurisdiction.

Since the last century, the United States Supreme Court approved the practice of considering a foreign corporation doing business in a State to have consented to being sued in that State. *Pennoyer v. Neff,* 95 U.S. 714, 735–736, 24 L.Ed. 565 (1878); see *Lafayette Ins. Co. v. French,* 59 U.S. (18 How.) 404, 15 L.Ed. 451 (1856). The doctrinal basis for this view was thereafter explained by reasoning that a corporation doing business in a State could be deemed "present" in the State, and thus subject to service of process there. See, *Philadelphia & Reading R. Co. v. McKibbin,* 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917); *International Harvester Co. v. Kentucky,* 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 (1914); cf. *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

Subsequent judicial developments denoted a departure from the presence test as enunciated in the above-cited decisions. The test for determining whether a State had jurisdiction over a foreign corporation was amplified and required an elucidation of whether there had been "such contacts of

---

**3.** Said provision authorizes service "[u]pon a corporation, company, partnership, association, or any other judicial person, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or designation by law to receive service of process." 32 L.P.R.A. App. II R. 4.4(e).

the corporation with the State of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." *International Shoe Co. v. Washington, supra,* 326 U.S. at 317, 66 S.Ct. at 158. The "quality and nature of the (Defendant's) activity" became a primary yardstick. *Id.* at 319, 66 S.Ct. 154; also, *McGee v. International Life Ins. Co., supra.* However, this new framework of analysis was couched in terms of increasing the ability of the state tribunals to extend their reach over nonresident defendants, *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and did not substantially lessen the vitality of the "presence" test in appropriate factual situations.

Thus, in *Perkins v. Benquet Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court specifically held that the Due Process Clause of the Fourteenth Amendment does not prevent a State from subjecting a foreign corporation who carries on continuous and systematic, though limited, business activities within the State to the jurisdiction of its Courts, even where, as in this case, the cause of action sued upon does not arise within the State nor does it relate to the corporation's activities there. In *Perkins,* service was effectuated upon the corporation's president while he was engaged in business in the forum state. The Court expressed that actual notice was given to the corporation through regular service of summons upon its president while he was in the State acting in that capacity. Therefore, the Court found no unfairness in subjecting the corporation to the jurisdiction of the courts of that State through such service of process. 342 U.S. at 444, 72 S.Ct. 413.

The Court, however, took care in pointing out that States are free to close their courts to actions against foreign business entities under circumstances resembling those presented in the case at bar. *Id.,* at 440–

441, 72 S.Ct. 413. See also, *International Shoe Co. v. Washington, supra,* 326 U.S. at 318, 66 S.Ct. 154.

Against this background, we must ascertain the ambit accorded by the Legislature of Puerto Rico to the power of courts to subject foreign insurance companies doing business in Puerto Rico to their jurisdiction, where neither the insured, the contract nor the casualty are related to the Commonwealth in any substantial way.

In order to obtain a certificate of authority to do business in Puerto Rico, any foreign insurance company is required by Section 3.170(1)(i) of the Insurance Code to file with the Commissioner of Insurance a certificate duly signed and authenticated, consenting to be sued in the Courts of Puerto Rico *"for any cause of action arising against it in Puerto Rico".* In those situations, valid legal process may be attained by service "on the Commissioner, or  . . . on the insurer's agent residing in Puerto Rico." 26 L.P.R.A. 317(1)(i). (Emphasis added). In turn, Section 3.270(1) of the Code, states that the appointment of the Insurance Commissioner, for purposes of receiving service of legal process, "shall remain in effect as long as there is in force *in Puerto Rico* any contract made by the insurer, or obligation arising therefrom." 26 L.P.R.A. 327(1) (Emphasis added).   .

A perusal of the aforementioned provisions gives rise to substantial doubts as to whether the Legislature of Puerto Rico intended to subject foreign insurers to suit in this jurisdiction by the sole fact that they are authorized to and do perform business transactions in Puerto Rico. See also, 26 L.P.R.A. 106.[4] More substantial connections between the subject of litigation and the insurer's activities within the forum are *prima facie* required. Plausible jurisdictional prerequisites could be that the cause of action must arise in Puerto Rico, or that the contract be negotiated, issued or delivered in the Commonwealth, or that there should exist any outstanding contractual liability enforceable in this jurisdiction.

---

**4.** The cited section establishes that "[n]o person shall engage in the business of insurance in Puerto Rico, or relative to a subject of insur-

ance resident, located, or to be performed in Puerto Rico, without complying with the applicable provisions of [the Insurance Code]."

Such a construction would be consistent with well recognized powers of States to either restrict or expand the jurisdiction of their Courts. *Perkins v. Benquet Mining Co., supra*; cf. *Pennsylvania Fire Insurance Co. v. Gold Issue Mining Co.*, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). Concededly, the activities carried on in behalf of the insurer herein in Puerto Rico may be "neither irregular nor casual." *International Shoe Co. v. Washington, supra*, 326 U.S. at 320, 66 S.Ct. 154, 160. However, it is clear that "the obligation which is here sued upon [did not arise] out of those very activities." *Ibid.*[5] Moreover, we are not faced with the type of statute discussed by the Louisiana Court of Appeals in *Smith v. Globe Indemnity Co.*, 243 So.2d 882 (La.App.1971); *Smith v. Globe Indemnity Co.*, 243 So.2d 882 (La.App.1971); see *Sacher v. Columbia Steamship Company*, 493 F.2d 1109 (C.A. 5, 1974), which was considered sufficiently broad to vest the Courts of Louisiana with jurisdiction over a nonresident insurer in circumstances similar to those present here. (See n. 8, *infra*.) Unlike the pertinent provisions of the local Insurance Code, the Louisiana statute makes no distinction between causes of action arising out of the business transacted within or outside the State.[6] See, *Cambre v. St. Paul Fire and Marine Insurance Co.*, 331 So.2d 585 (La.App.1976).

In our opinion, there exist strong argument of statutory construction against requiring a foreign insurer to defend the merits of a contractual insurance claim which is wholly unrelated to this jurisdiction. Cf., *Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); *Hartford Accident & Indemnity Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178 (1943). Nevertheless, binding

precedent constrains us to reach a contrary conclusion.

Our attention is drawn to the case of *Garcia Pujol v. United States Life Insurance Company*, 396 F.2d 430 (C.A. 1, 1968). That case involved a suit by a resident alien domiciled in Puerto Rico, to collect the proceeds of an insurance policy issued to him in 1942 in Havana, Cuba by a New York insurance corporation. Process was served on Defendant's general agent in Puerto Rico, appointed pursuant to 26 L.P.R.A. 317(1)(i). Mirroring the language of the statute, the certificate of appointment and consent to suit evinced Defendant's consent to be sued "for any cause of action arising against it in Puerto Rico." This Court (Cancio, J.) dismissed the action for lack of jurisdiction. The Court of Appeals agreed with the Court *a quo* in that consent was limited to actions arising out of policies issued, or transactions carried out by the Defendant in Puerto Rico. Despite the limited nature of the statutory and actual consent, however, the Court of Appeals, citing *Perkins v. Benquet Consolidated Mining Co., supra*, opined that the fact that the controversy did not arise out of any activity of the Defendant in Puerto Rico was not necessarily fatal to the existence of jurisdiction, should its business activities in the Commonwealth be sufficient to subject it to legal process pursuant to Rule 4.4(e) of the Puerto Rico Rules of Civil Procedure.[7] The Judgment was therefore vacated and the case remanded for consideration of that issue.

The fact that the insured in *Garcia Pujol* was a resident of Puerto Rico could conceivably furnish grounds for distinction. See, *McGee v. International Life Insurance Co., supra*, 355 U.S. at 223, 78 S.Ct. 199. More-

---

5. Since the Puerto Rico Long Arm Statute, 32 L.P.R.A. App. II, R. 4.7, is in no way involved in this case, such a requirement is not literally mandated. Cf. *Ruiz v. Economics Laboratory, Inc.*, 290 F.Supp. 701 (D.C.P.R., 1968).

6. L.S.A. R.S. 22:985 reads in part:
   "Every foreign or alien insurer shall appoint the secretary of state to be its true and lawful attorney in this state upon whom . . . all lawful process *in any action or proceeding*

*against such insurer* may be served, which shall constitute service on such insurer." (Emphasis supplied).

7. Noticeably absent from the Court's analysis was a consideration of whether the Commonwealth had validly exercised its faculty to close the doors of its Courts to the controversy. See, *Perkins v. Benguet Consolidated Mining Co., supra*, 342 U.S. at 440–441, 72 S.Ct. 413.

over, the decision does not reflect if, by the nature and coverage of the policy in that case the same could be reasonably enforced in more than one forum. See, *Clay v. Sun Ins. Office Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964). However, in the absence of a clearer picture of the relevant factors which may have been involved in *Garcia Pujol*, it is not incumbent upon us to elude its applicability to this case by guesswork. There being no constitutional impediments, and actual notice having been received by the insurer, we are satisfied that there is no unfairness or unreasonableness in subjecting it to this Court's jurisdiction. *International Shoe Co. v. State of Washington, supra*, 326 U.S. at 318, 66 S.Ct. 154; cf. *Watson v. Employers Liability Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954); *Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., supra*; *Volkswagen Interamericana, S.A. v. Rohlsen*, 360 F.2d 437 (C.A. 1, 1966), cert. denied 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143. We would undoubtedly have greater difficulty following *Garcia Pujol* if such a path were determinative for purposes of the liability of the insurer in this action. In the case of instance, however, certain factors which, though not jurisdictional in the technical sense, are closely akin to an absence of personal jurisdiction compel us to reject the claims asserted herein against this third party Defendant.

VALIDITY OF THE DIRECT CAUSE OF ACTION.

■ Our finding that the insurer in this case is properly before this Court lacks significance for purposes of the sufficiency of the purported direct action. *Esteve v. Allstate Ins. Co.*, 351 So.2d 117 (La.Supp.Ct. 1977).[8] This is so because the direct action statute is not a legislative grant of personal jurisdiction but rather establishes a direct liability of the insurer which is not made dependent either upon payment by the insured or upon any final judgment against

him. *Trigo v. The Travelers Ins. Co., supra*, at 849.

Section 20.030(1) of the Insurance Code of Puerto Rico, 26 L.P.R.A. 2003(1) reads thus:

"Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured."

In this case we are requested to apply the above-quoted provision to a case where the insured is beyond the reach of the Long Arm statute of Puerto Rico, the acts and the injuries giving rise to suit occurred in another state and the policy sued upon was negotiated, issued and delivered elsewhere by a non-domestic insurance company. We decline to so distend the ambit of the local statute.

The Insurance Code of Puerto Rico, approved on June 19, 1957, was designed to regulate the insurance operations *in Puerto Rico*. *Diario de Sesiones*, Vol. 8, p. 778. Thus, despite third party Plaintiffs' vehement argumentation, nowhere have we found an intent of the Puerto Rico Legislature to make the Code's provisions applicable to every insurance contract written and/or delivered anywhere and having no contact or point of reference with Puerto Rico. See, *Taylor v. Fishing Tools, Inc.*, 274 F.Supp. 666, 670 (E.D.La., 1967).

---

8. *Our reference to Louisiana decisions is not coincidental or capricious. The Supreme Court of Puerto Rico has given much weight to the pronouncements of the courts of Louisiana concerning the analogous insurance statute of that State. Garcia v. Northern Assurance Co.,* 92 P.R.R. 236, 241–46 (1965); *Trigo v. The Travelers Ins. Co.,* 91 P.R.R. 843, 849–50 (1965); see, *Ruiz Rodriguez v. Litton Indus. Leasing Corp.,* 428 F.Supp. 1232 (D.C.P.R. 1977), aff'd 574 F.2d 44 (C.A. 1, 1978).

The circumstances presented by this record, when viewed against the pertinent legal considerations, completely refute Defendant's contention that a direct action is available in this case by the sole reason of the domicile in Puerto Rico of the injured party.

There is nothing indicating that the policy involved in this case covers a risk in Puerto Rico so as to fall under the coverage of the Local Insurance Code. Cf. *Commercial Ins. Co. v. American and Foreign Ins. Ass'n*, 370 F.Supp. 345 (D.C.P.R.1974). As we have discussed hereinbefore, the contract bears no relationship whatsoever with the Commonwealth. Thus, unlike the situation with regard to contracts governed by the statute, it cannot be deemed to incorporate, *ope legis*, the direct action provisions of the Insurance Code. See, *Trigo v. The Travelers Ins. Co.*, supra, at 850.

In this context, an enlightening case is *Hernádez v. Steamship Mut. Underwriting Assoc. Ltd.*, 388 F.Supp. 312 (D.C.P.R., 1974). The Plaintiff in *Hernández* brought an action against the shipowner, an Italian corporation, for injuries sustained during stevedoring operations carried on in Puerto Rico. When the shipowner was adjudged bankrupt, Plaintiff named its indemnity insurer as additional defendant asserting a right to sue it directly under the direct action statute of Puerto Rico. The insurer moved for summary judgment contending, *inter alia*, that the laws of Puerto Rico, and particularly the direct action statute, did not apply to it since it conducted no business in, and had no contacts with the jurisdiction.

The Court (Ferguson, J.), agreed with movant, stating that since the insurance contract was not made in Puerto Rico nor did it deal with an object of insurance known to be primarily in Puerto Rico, it was out of the reach of the local statutory provisions. The Court expressed:

"．．． this court finds nothing in the statutes or case law of Puerto Rico to indicate that the Commonwealth's Legislature intended its direct action statute to apply to contracts made and intended to be performed totally outside the Commonwealth. 26 L.P.R.A. § 1119, discussed earlier, is something of a clear indication to the contrary, in its inclusion only of policies made or to be performed in Puerto Rico. The Supreme Court of Puerto Rico, in discussing another aspect of the insurance business—rate regulation—expanded the reach of the Commonwealth's rate regulation power to contracts written, at least in part, outside the state, but relied in large part on the fact that Puerto Rico was the jurisdiction with the greatest contact and closest relation with the contract. There was no such close relation between Puerto Rico and the indemnification contract—or its intended benefits—in this case." 388 F.Supp. at 314 (citations omitted).

The instant case also presents an absence of sufficient ties between the contract and Puerto Rico as would be required in order to sustain the cause of action against the insured. It is true that the Court in *Hernández* suggested the plausibility of an argument that, had the insurer done business in Puerto Rico, it could have been deemed subjected to the local laws by availing itself of the benefits of Puerto Rico's sovereignty. However, the point, which has already been considered by us in the context of the present case, was not expressly decided. Conceivably, the fact that the injury took place in Puerto Rico, coupled with the presence of the insurer here, may give rise to such a conclusion. See, *Watson v. Employers Liability Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954). But in any event, the contract should have been intended to cover such an injury. *Id.*, at 71–72, 75 S.Ct. 166. None of those factors are present in the case at bar.

▬ Additional weighty considerations lead us to dismiss the third party complaint filed herein. As a general rule, it is the law of the state of contracting which determines whether a direct action is permitted or not, notwithstanding the domestic laws of the forum to the contrary. 12 *Couch on Insurance 2d*, § 45:932 (1964). That rule is substantially mirrored by the law of Puerto

Rico, under which the law of Florida would predominate, insofar as that state undoubtedly has more contact with the contract and the object insured. *Maryland Cas. Co. v. S. J. Racing Ass'n*, 83 P.R.R. 538, 544–46 (1961); *González y Camejo v. Sun Life Assurance Co. of Canada*, 313 F.Supp. 1011 (DCPR, 1970). Indeed, to disregard said doctrines blindly could raise serious constitutional questions. *Couch*, supra.

■ The right to institute an action directly under the local statute does not depend upon the ability to bring the insured to suit. *Garcia v. Northern Assurance Co.*, supra. However, under Florida jurisprudence, no right of action appears to lie against the insurer alone. The insured tortfeasor is an indispensable party in any action against the insurer. See, *Freed v. State Farm Auto Ins. Co.*, 491 F.2d 972 (C.A. 5, 1974); *In Re Brent Towing Co.*, 414 F.Supp. 131 (N.D.Fla., 1975); *Shingleton v. Bussey*, 223 So.2d 713 (Fla.1969); cf. Florida Stats. § 627–7262. Since the presence of the insured in this action is not constitutionally permitted, we would be transgressing important postulates of law of the State having dominant contacts with the controversy if we were to allow a direct claim against the insurer alone. Cf. *Barrios v. Dade County of State of Florida*, 310 F. Supp. 744 (S.D.N.Y., 1970).[9] We thus conclude that no cause of action has been stated against the Travelers Insurance Companies in this case.

In view of the foregoing, the third party complaint filed by Puerto Rico Marine Management, Inc. and Puerto Rico Maritime Shipping Authority against the Jacksonville Port Authority and the Travelers Insurance Companies is hereby DISMISSED.

There being no just reason for delay, the Clerk of the Court is instructed to enter Judgment in accordance with this Opinion.

IT IS SO ORDERED.

---

**9.** The parties place substantial reliance on the interpretations given to the direct action statute of Louisiana. Although they support our present views, we find them inapposite to the issues raised herein. The Courts of Louisiana have decided that there is no right of direct action where the accident does not take place in Louisiana and suit is brought upon a policy not issued and delivered in that State, even where the nonresident insurer is authorized to do business in Louisiana. *Esteve v. Allstate Ins. Co.*, 343 So.2d 353 (La.App.1977), aff'd 351 So.2d 117 (Sup.1977); see also *Kirchman v. Mikula*, 258 So.2d 701 (La.App.1972). But those decisions rested on express statutory language which is not found in the local provision. See, La.R.S. 22:655.