Carmelo **MORALES–MELENDEZ**, Alicia **Rivera-de-Morales**, individually and as members of the Conjugal Partnership which they comprise, Plaintiffs,

v.

**STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LTD.**, and United States of America, Defendants.

Civ. No. 89–0250CCC.

United States District Court, D. Puerto Rico.

May 24, 1991.

José F. Sárraga, San Juan, P.R., for plaintiffs.

Fernando D. Castro, Calvesbert & Brown, San Juan, P.R., for Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.

Arthur J. Volkle, Jr., Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., and Daniel F. López–Romo, U.S. Atty. for Puerto Rico and Fidel A. Sevillano-del-Río, Asst. U.S. Atty., Hato Rey, P.R., for the U.S.

## OPINION AND ORDER

CEREZO, District Judge.

This tort action, brought both under diversity jurisdiction and the Suits in Admiralty Act, 46 U.S.C. App. §§ 741–745 (*see*

complaint, ¶ 3, 4, 19) is now before us for resolution of several pending motions. The relevant undisputed facts, as obtained from the myriad of documents on file, are as follows: Plaintiffs Carmelo Morales–Meléndez and Alicia Rivera–de–Morales are residents of the town of Yabucoa, Puerto Rico. At the time in which the incidents alleged in the complaint took place, plaintiff Carmelo Morales–Meléndez was working as a marine cargo inspector of petroleum products for E.W. Saybolt and Co. (Saybolt). This company, in turn, was contracted by Puerto Rico Sun Oil Co. (Sun Oil) to provide inspection services in relation to petroleum products which were going to be delivered to the M/V PAUL BUCK, a tanker vessel. At that time, the vessel was under a time-charter to defendant United States of America through the Military Sealift Command, an agency of the Department of the Navy; although it was being operated by Ocean Ships, Inc. (Ocean Ships) under the terms of an operating contract entered into with Ocean Freedom Shipping, Inc. (Ocean Freedom), its demise charterer. It is not disputed that Ocean Ships maintained complete control of the manning, provisioning, equipment maintenance and marine operation of the M/V PAUL BUCK. The remaining defendant, Steamship Mutual (Steamship), is the vessel's protection and indemnity underwriter.

On March 5, 1988, the M/V PAUL BUCK arrived at Yabucoa, Puerto Rico, and shortly thereafter it was boarded by Mr. Morales–Meléndez in order to conduct the inspection of its equipment as required by the contract between Saybolt and Sun Oil. While working on board the M/V PAUL BUCK, Mr. Morales–Meléndez suffered a fall, as a result of which he sustained personal injuries. First aid treatment was provided to him on board the PAUL BUCK, but he was later transferred to a hospital in Humacao, Puerto Rico, where he received additional medical treatment. Eventually, he was referred to the State Insurance Fund (SIF) of Puerto Rico for medical examination. He continued receiving medical treatment through the SIF.

Mr. Morales–Meléndez apparently having concluded all the administrative proceedings required by the Puerto Rico Workmen's Accident Compensation Act (PRWA-CA)[1], 11 L.P.R.A. §§ 1–42, he then filed this action seeking damages for the injuries allegedly suffered. Originally, the action was brought against Ocean Ships, Steamship, and the owner of the ship.[2] Before responding to the pleadings, the named defendants moved for dismissal and/or summary judgment (docket entries 5 & 9). Plaintiffs opposed these motions (docket entry 12), but later moved to amend the complaint (docket entries 11 & 14) apparently influenced by the allegations raised in defendants' motions. In their amended complaint, the United States of America was included as a defendant, while at the same time Ocean Ships and the vessel's owner were dropped from the action. As additional motions further supplementing the original motion to dismiss and opposition were being filed, plaintiffs moved once again for leave to amend the complaint (docket entry 24), this time to rejoin Ocean Ships and the vessel owner as parties,[3] and to add an additional defendant identified as Ocean Shipholdings, Inc. (Shipholdings). No opposition to this request for leave to amend the complaint was ever filed. The United States then filed a motion requesting dismissal or summary judgment in their favor (docket entries 29, 31 & 33),

---

**1.** As we will discuss later, the Act bars all employees insured in accordance with its provisions from bringing suit against their employers for any accidents suffered while at work (*See* 11 L.P.R.A. § 21). In cases where the work-related accident is caused by a third party, however, direct actions against the tortfeasor are permitted. In those instances, the filing of the action can be made only after ninety (90) days have elapsed since the issuance of a final decision in the case by the Manager of the SIF.

**2.** As the correct name of this last defendant appeared to be unknown to the plaintiffs at the time of the filing of the original complaint, it was identified in the caption and the pleadings simply with the fictitious name of John Doe Shipowner.

**3.** On this occasion, however, plaintiffs have identified the purported ship owner with what appears to be its real name, Ocean Freedom Shipping, Inc. (Ocean Freedom).

which was never opposed by plaintiff. All these motions remain pending, and we now consider them in turn.

*Defendants Steamship and Ocean Ships'*[4] *Motion to Dismiss and/or for Summary Judgment*

In their motion requesting summary dismissal[5] of the action brought against them, defendants Steamship and Ocean Ships have raised several legal arguments. The key argument,[6] centers on their claim that pursuant to the doctrine of "statutory employer," developed by the Puerto Rico Supreme Court when interpreting the provisions of the PRWACA, they are immune from suit. Plaintiffs contend that defendants do not qualify as "statutory employers" under the doctrine.

■■■ The PRWACA, one of the Commonwealth's most notable pieces of social legislation, provides that those employees suffering work related injuries, illnesses or disabilities, when insured according to the statute, have no additional remedy against their employers beside those provided through the State Insurance Fund. As explained by the Puerto Rico Supreme Court, the Act's main intention was to "compromise the higher compensation available under the general civil law rules in return for a moderate but reliable statutory compensation based on dependency." *Santiago–*

*Hodge v. Parke Davis Co.*, 126 D.P.R. ___, 90 J.T.S. 42, p. 7597. Under the Act the injured but insured worker lacks a cause of action to sue his employer for damages, notwithstanding the employer's degree of negligence. However, in those circumstances in which a third party may be liable, the PRWACA does not affect the liability of the wrongdoer who is a stranger to the employer-employee relationship. As the exclusive remedy provided by the Act is not applicable in those circumstances, injured workers may then file direct actions in Court against any liable third party (*see* 11 L.P.R.A. § 32).

■■ It was in the context of deciding who specifically constitutes an employer and who a third party, under the provisions of the Act, that the doctrine of statutory employer was developed by the Puerto Rico Supreme Court. The doctrine is, after all, an expansion of the traditional concept of the employer, and is based on the Court's interpretation of § 20 of the Act, which states as follows:

> Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a

---

4. Plaintiffs have given the impression that the Ocean Ships' motion seeking dismissal is moot. That is not the case. It should be noted that plaintiffs' latest request to amend their complaint seeks to reinstate Ocean Ships as one of the defendants in this action. In any event, all of Ocean Ships' allegations were also raised by Steamship, which still remains a defendant in the case.

5. Since defendants presented a statement of material facts not in dispute, an affidavit, and other supporting documents, we treat the dismissal motion as one for summary judgment. Accordingly, we consider the pleadings and supporting documents in the light most favorable to plaintiffs. *Puerto Rican–American Ins. v. Benjamin Shipping*, 829 F.2d 281, 285 (1st Cir.1987).

6. Defendants have also alleged in their motion that as plaintiff does not classify as a "seaman," in the sense that said term has been interpreted under the Jones Act (46 U.S.C.App. § 688), he is consequently barred from bringing suit under

that statute. We note, however, that plaintiffs' asserted jurisdictional basis for the claims brought against these two defendants is diversity of citizenship between the parties (*see* amended complaint, ¶ 5, docket entry 6; second amended complaint, ¶ 3, docket entry 14), and not the Jones Act. Defendants have not denied the existence of diversity.

As for defendants' argument that since plaintiff Morales–Meléndez sustained his injuries within the navigable waters of Puerto Rico it is necessary, under prevalent case law, to apply local law instead of the general maritime law (which presupposes that this is an admiralty action), we consider it inconsequential. After all, defendants have apparently raised this argument in order to convince the Court that the applicable law is the PRWACA. We also consider it applicable, but under the general rule that mandates the application of the law of the forum in diversity cases. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). For that reason, we now address the allegations raised under the PRWACA.

contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the employer's current payroll in which shall be included the above-mentioned laborers; provided, that this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this Act.

The Court, in explaining the purpose of that section, expressed that:

[Its] purpose ... is not only to forestall the evasion of the Act, but also to protect the workers and employees of irresponsible and uninsured subcontractors by imposing liability on the principal contractor, who has it within its power, in choosing subcontractors, to insist upon appropriate protection against labor accidents. In this situation the contractor is denominated as the statutory employer to distinguish him from the subcontractor, called the contractual or real employer. Hence, the liability imposed on the principal contractor is of a subsidiary nature, so that if a subcontractor carries insurance as independent employer the former assumes no risk.

*Colón–Santiago v. Industrial Commission,* 97 P.R.R. 203, 204–05 (1969) (citations omitted). Hence, according to the Court, the immunity provided by the Act extended not only to the "direct" employer of the injured employee, but also to the contractor of the direct employer if it had complied with the requirements of the above-quoted provision. The latter was then considered the employee's "statutory" employer.

In a later case, the Court attempted to construe a more precise definition of the term, by stating that it encompassed all "... owners and principals who are bound by law to insure the employees hired by contractors or subcontractors to carry out works and services, when said employees are not insured by the latter." *Vda. de Costas v. Puerto Rico Olefins,* 107 D.P.R. 782, 785 (1978) (official translation). Two years later, in *Ruíz–Díaz v. Vargas–Reyes,* 109 D.P.R. 761 (1980), the Court clarified

that the doctrine did not extend the employer's immunity to contractors that are in no way employers of the injured workers or where no employer-employee relationship exists. More recently, in *Santiago–Hodge v. Parke–Davis, supra,* the Court reaffirmed the limited scope of the doctrine, stating that "[o]ur case law has only recognized the 'statutory employer' within the context of a contract or subcontract for work or services, and only for project owners, principal contractors or subcontractors who had, with regard to the injured worker, the mutual legal obligation to insure him with the State Insurance Fund." *Id.* at p. 7598 (citations omitted). The Court emphasized that "[a]bsent that legal nexus linking the worker's direct employer to the wrongdoer in the 'mutual legal obligation' to insure the employee with the Fund, we would be facing a 'third party' lacking statutory protection against claims by injured workers." *Id.* (citations omitted).

In view of the above stated, and in order to correctly apply the doctrine of statutory employer in the case at bar, we are then required to determine whether plaintiff's alleged wrongdoer, Ocean Ships, was "mutually legally obligated" with plaintiff's direct employer, Saybolt, to insure him with the SIF. Having examined all the undisputed relevant facts now before us, however, we find that there is insufficient information to support such a conclusion. Indeed, the documentary evidence on record clearly shows that plaintiff was directly employed by Saybolt, and that this company was in turn subcontracted by Sun Oil to conduct inspection services aboard the M/V PAUL BUCK. However, no showing was made by Ocean Ships on whether it entered into any kind of project or service contract with any of these two companies. In the absence of this contractual provision, and pursuant to the current state of the law, no "mutual legal obligation" to insure plaintiff arose between Ocean Ships and Saybolt. *See Santiago–Hodge, supra,* at 7599. ("The *contractual* relationship between the actors under the 'statutory employer doctrine' has always been crucial to its application.") (emphasis in original). *See also Santiago–Hodge v.*

*Parke Davis & Co.*, 859 F.2d 1026, 1031 (1st Cir.1988) ("... the relevant relationship between the actual and the statutory employer must be a vertical, *contractual* one, in order to link the employee with the statutory employer"). (Emphasis ours.) Accordingly, on the basis of the record now before us, Ocean Ships cannot be classified as the statutory employer of plaintiff Morales–Meléndez, and hence the entry of summary judgment in its favor based on this defense is hereby DENIED.

■ Defendant Steamship, however, has raised an additional argument which we must address.[7] It now claims that inasmuch as it is not an insurer of liability, but merely an indemnifier of any actual losses sustained by a paid-up member of its protection and indemnity club, it is not liable to the plaintiffs unless its assureds have become obligated to pay by a final judgment or have, in fact, paid. Defendant bases its contention on Rule 15 of its P. & I. Club, which states that "... it shall be a condition precedent of a Member's right to recover from the funds of the Club in respect of any liability ... that he shall first have paid the same." (The Steamship Mutual Underwriting Association (Bermuda) Limited. 1988/89 Rules, Class 1–Protection and Indemnity, Rule 15). As no final judgment has been entered against any of its assureds, and neither have they paid any indemnity to the plaintiffs, Steamship contends that plaintiffs do not have a valid cause of action against it at this time. Accordingly, it has asked for the dismissal of the claim brought against it.

We are not persuaded by Steamship's argument, however, as we are convinced that the Puerto Rico Direct Action statute, 26 L.P.R.A. § 2003, has provided plaintiffs with a cause of action against it, notwithstanding the contrary provisions contained in the protection and indemnity policy. The statute, after all, becomes a part of every insurance policy having effect in the Commonwealth as though written into the policy, *Trigo v. The Travelers Ins. Co.*, 91 P.R.R. 843, 850 (1965); and, in doing so, it effectively renders without legal effect such "no action" clauses as the one embodied in the above quoted Rule 15. *See Couch on Insurance* 2d (Rev.Ed.) §§ 45.-788, 45.805. Moreover, it further imposes upon the insurers a "substantive and absolute liability ... toward the prejudiced party whenever there [is] a loss covered by the policy, which responsibility [is] not to depend either upon payment by the insured by virtue of a judgment against him, or upon any final judgment against him." *Id.*, at p. 849. *See also Morales v. Puerto Rico Marine Management, Inc.*, 474 F.Supp. 1172, 1177 (D.P.R.1979). It is clear, then, that under these circumstances Rule 15 cannot be interpreted as precluding a direct action against Steamship. The fact that we are dealing with a marine protection and indemnity policy, an element repeatedly emphasized by defendant Steamship, is of no consequence. *See González v. Caribbean Carriers, Ltd.*, 379 F.Supp. 634 (D.P.R.1974) (holding that action could be maintained under Puerto Rico direct action statute against insurer on marine protection and indemnity policy). *See also*, generally, *Morewitz v. West of England Ship Owners Mut.*, 896 F.2d 495, 499 n. 4 (11th Cir.1990), *Albany Ins. Co. v. Bengal Marine, Inc.*, 857 F.2d 250, 255 (5th Cir. 1988), *Olympic Towing Corporation v. Nebel Towing Company*, 419 F.2d 230, 236–37 (5th Cir.1969) (*overruled on other grounds, Crown Zellerbach Corp. v. Ingram Industries, Inc.*, 783 F.2d 1296 (5th Cir.1986). Therefore, defendant Steamship's request for entry of summary judgment in its favor is also hereby DENIED.

*The United States' Motion to Dismiss and/or for Summary Judgment*

■ We now proceed to entertain the arguments raised by the government in its

---

**7.** Defendant Steamship had previously objected to the action brought against it under the Puerto Rico Direct Action statute on jurisdictional grounds, arguing that inasmuch as it lacked the constitutionally required minimum contacts with the forum it was not amenable to be sued under the same (*see* docket entry 15). However, it later moved to dismiss this allegation (docket entries 18, 19), raising instead as a defense its purported immunity from suit based on the nature of the protection and indemnity insurance policy issued by it. Accordingly, we address only this last issue.

motion to dismiss and/or for summary judgment.[8] As we previously noted, the government was not an original party to this suit, but was later added by plaintiffs apparently based on a claim made by the original defendants which insisted that, pursuant to the Suits in Admiralty Act, (SIAA) the exclusive remedy in this action lay only against the sovereign. *See* 46 U.S.C. App. § 745. The government has taken an exception to that assessment, however, claiming instead that under the specific facts of this case the SIAA fails to provide a remedy as the exclusivity provision of the statute does not apply.

We agree with the government, as the language of the statute is patently clear in allowing proceedings against the United States only in those circumstances where, if a vessel were privately owned or operated, a proceeding in admiralty could be maintained against the private party. *See* 46 U.S.C. App. § 742. In this case, the undisputed evidence on record shows that the United States was merely acting as a time charterer without operational control of the PAUL BUCK when the accident which originated this litigation took place. *See* Time Charter Party between Ocean Freedom Shipping, Inc. and The United States of America, Art. 35,[9] Art. 22(a)[10]). As the general rule on a time charterer's liability is that it assumes no liability flowing from the unseaworthiness of the vessel or the negligence of the crew unless it is shown that the parties to the charter intended otherwise, *Matter of P & E Boat Rentals, Inc.*, 872 F.2d 642, 647 (5th Cir. 1989), *Hayes v. Wilh Wilhelmsen Enterprises, Ltd.*, 818 F.2d 1557, 1559 (11th Cir. 1987), *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 784 F.2d 106, 113–114

(2d Cir.1986), no claim in admiralty lies against the United States and, therefore, no action can be properly maintained against it under the SIAA. *See Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir.1989). Hence, summary judgment must be entered in favor of the United States.

Finally, we have before us plaintiffs' motion requesting leave to file a third amended complaint. After having examined the tendered amended complaint, and upon considering the primal stage in which this case is still in, we heed the mandate of Rule 15(a) of the Federal Rules of Civil Procedure and, in the exercise of our discretion, GRANT plaintiffs' request. Accordingly, plaintiffs' third amended complaint is ORDERED FILED. However, all the claims brought in it against the United States are hereby ORDERED DISMISSED for the same reasons stated above when discussing the government's motion for summary judgment.

In sum, defendants Steamship and Ocean Ships' Motion for summary judgment is hereby DENIED, while defendant United States of America's motion for summary judgment is GRANTED. Plaintiffs' tendered third amended complaint is ORDERED FILED. Partial judgment will be entered in favor of the United States by separate order.

SO ORDERED.

---

**8.** For the same reasons stated in note 4, *supra,* we similarly consider this motion as one for summary judgment.

**9.** This article reads as follows:

ARTICLE 35. CHARTER NOT A DEMISE

Nothing herein contained shall be construed as creating a demise of the Vessel to the Charterer; the Contractor shall at all times retain complete and exclusive possession and control of the Vessel and its navigation.

**10.** This article reads in relevant part:

ARTICLE 22. MASTERS, OFFICERS AND CREW

(a) The Masters, Officers, and Crew of the Vessel shall be appointed or hired by the Contractor, and shall be deemed to be the servants and agents of the Contractor at all times, except as otherwise specified in this Charter. The Master of the Vessel shall be under the direction of the Charterer with respect to the employment of the Vessel, but shall not be under the Charterer's orders with respect to navigation, care and custody of the Vessel, and care of the cargo.